GEORGE W. L. BENEDICT *vs*. HENRY B. PETTES ET ALS.

Third Judicial District, Bridgeport, April Term, 1912.
PRENTICE, THAYER, RORABACK, GEORGE W. WHEELER AND RALPH
WHEELER, Js.

By § 32 of the charter of the city of New Haven of 1869, providing
for the establishment of building lines, a written survey containing
a particular description of such line or lines, with the quantity of
land on which the proprietor is prohibited to build, was to be lodged
with the town clerk and recorded by him. By a Special Act of
1872, by which the method of designating said lines was made
more definite, nothing being said concerning the recording of said
written survey, so much of § 32 of the Act of 1869 as was incon-
sistent with the latter Act was repealed. *Held* that the provision
of the Act of 1869, regarding recording the written survey in the
town clerk's office, was not repealed by the Act of 1872.
Lodging and recording the written survey in the town clerk's office,
according to the provisions of the Act of 1869, is required to create
an incumbrance upon the land as against a subsequent purchaser
without knowledge of the claimed existence of said line.

Argued April 17th—decided July 19th, 1912.

ACTION to foreclose a mortgage, and for possession of
the mortgaged premises, brought to and tried by the
Superior Court in New Haven County, *Curtis, J.;* facts
found and judgment rendered for the plaintiff, from
which the defendants Henry B. and Fannie B. Pettes
appealed. *No error*.

The mortgage sought to be foreclosed was given to
secure a part of the purchase price of the mortgaged
premises which Mrs. Pettes, one of the defendants, pur-
chased in 1907 of the plaintiff on the day the mortgage
was given and which the plaintiff conveyed to her by a
warranty deed containing the usual covenants against
all incumbrances except two, which were specifically
excepted and do not figure in the case. The defendants,
in their answer and counterclaim, alleged that at the

time this deed was given the mortgaged premises, which were situated at the corner of Chapel and Dwight streets in New Haven, were subject to the incumbrance of building lines established by the city, one upon each of those streets, which prevented the grantor from building upon a portion of the premises and diminished the value thereof. No question is raised on the appeal regarding the Dwight Street line. In their counterclaim the defendants asked for the cancellation of the mortgage, or a deduction from the mortgage debt of the amount by which the premises were depreciated by reason of the existence of the building lines. The parties were at issue upon a denial of the allegations of the answer and counterclaim.

The charter of the city of New Haven of 1869 (6 Special Laws, pp. 759, 772) provided that its court of common council should have power to establish building lines in the streets and ways of the city, beyond which it should not be lawful to erect buildings or other structures. It further provided, § 32: "Whenever building lines for any street or way are designated by the court of common council, a survey in writing shall be made, containing a particular description of such line or lines, with the quantity of land on which the proprietor or proprietors are prohibited to build, which, being accepted by said court of common council, shall be recorded in the records of said city, and a copy thereof lodged on file with the town clerk of the town of New Haven and recorded by him. And the damage done to such proprietor or proprietors by such designation, shall be paid in whole or in part by the city, or in whole or in part by the person or persons who may apply for the same, as the court of common council shall direct; which damages shall be estimated by three judicious, disinterested freeholders of the city or town of New Haven, who shall be appointed and sworn by the mayor or either alderman,

and a certificate thereof made and recorded in the records of the city. And it shall be the duty of said freeholders to make return of their doings to the clerk of said city, who shall record the same: *provided*, nevertheless, that if any person shall be aggrieved by the estimate of damages, as aforesaid, or by any acceptance of any such survey, he shall be entitled to the same relief in all respects as hereinbefore provided for parties aggrieved, in section 30."

In 1872 the General Assembly passed an Act (7 Special Laws, pp. 343, 344), which remained in force until after 1877, and reads as follows: "Section 1. Whenever, as provided in the thirty-second section of the charter of the city of New Haven, building lines are to be designated on any street or streets or part of a street in said city, the court of common council of said city shall refer the matter of such designation to a committee of its own members to be appointed by it for that purpose. Said committee shall cause a survey in writing to be made of such proposed line or lines, which survey shall contain a particular description of said line or lines, and of the land on which each proprietor is to be prohibited from building, and said committee shall estimate and assess the damages, if any, to be paid to such proprietors, respectively. And the benefits, if any, to be paid by the persons whose estate will be especially benefited by such designation respectively.

" Sec. 2. Said committee shall give to said proprietors and to the persons whose estate it is claimed will be especially benefited by such designation, such notice of the time and place of their meeting for the purpose of designating said line or lines, and of estimating and assessing said damages and benefits, as is provided in the twenty-fifth section of the charter of said city, in case of taking land for public parks, highways, or streets, notifying them to appear before said committee, if they

see cause, and be heard in reference to such designation, estimates, and assessments.

"Sec. 3. After said hearing said committee shall make report to said court of common council in writing of all their doings in the premises. And when said report shall have been accepted and approved by said court of common council, and recorded at length in the records of said city; and said damages shall have been paid by the city to the person or persons entitled thereto, or deposited with the treasurer of said city to his or their use, then said line or lines shall be deemed to have been legally designated and not before, and then, and not before, said estimates and assessments of benefits shall be deemed to have been legally made and become payable. And thereafter payment of said assessments may be enforced in the manner provided for enforcing assessments, in the thirty-seventh and fiftieth sections of said city charter.

"Sec. 4. In no case shall the total amount of the assessments for benefits accruing from such designation exceed the total amount of the damages assessed on account of the same.

"Sec. 5. Any person who shall feel aggrieved by the such designation, or by such assessments of the damages or benefits, may have the same relief by appeal to the superior court as now provided in the thirtieth section of said city charter, in case of persons aggrieved by any of the acts named in said section.

"Sec. 6. So much of section thirty-second of said city charter as is inconsistent herewith is hereby repealed."

In 1877 the court of common council of the city took proceedings with reference to the establishment of building lines on Chapel Street, the committee on building lines making a report, with a survey attached, which was accepted by the court of common council, approved

by the mayor, and, with the exception of the survey attached, was copied in full into the city records. This report and the action taken thereon, as thus recorded, was as follows:—

"To the Honorable Court of Common Council of the City of New Haven: Your committee on Building Lines to whom was referred the order of said court bearing date the        day of        , A. D. 1877, directing the designation of building lines in Chapel Street, hereby respectfully report, that we have attended to the duty assigned us, and that we caused a notice to be given to all persons whose estate it is claimed is especially benefited by such designation, and to all other persons interested in the proposed building line, in all respects pursuant to the provisions of the charter of said city, to appear before us and be heard in reference to the designation of said line, and of estimating and assessing the damages and benefits accruing. And we fully heard at the time and place specified in said notice all persons who appeared before us. And your Committee thereupon caused a building line to be established, to wit: On both sides of Chapel Street between Howe street and Orchard street at fifteen feet back from and parallel with the street line, except for corner lots, which for a distance not exceeding sixty feet from either corner shall be four feet back and parallel with the street line, and also caused a survey in writing to be made of said proposed line, which survey contains a particular description of said land, and of the land on which each proprietor is to be prohibited from building; which survey is hereby annexed to and made a part of this report. And your Committee thereupon proceeded to estimate and assess the damages to be paid to said proprietors, respectively, and the benefits to be paid by the persons whose estate will be especially benefited by such designation, respectively. And thereupon we do

assess and determine the damage and benefits to be equal to all persons interested in the aforesaid building line. All of which is respectively submitted. Henry Kettendorf, Chairman.

"Board of Alderman, July 6, 1877. Read, report accepted, order passed, building line established and assessments laid. Seth T. Seeley, City Clerk.

"Board of Councilmen, July 16, 1877. Read, report accepted, order passed, building lines established and assessments laid. Charles L. Hubbell, Clerk.

"City of New Haven, July 17, 1877. Approved, Wm. R. Shelton, Mayor. . . . Attest: Seth T. Seeley, City Clerk."

None of the proceedings were filed and recorded in the town clerk's office, and there was no record of any kind, and no survey in writing of such building line, in the town clerk's office,

The mortgaged premises are upon the northerly side of Chapel Street, between Howe and Orchard streets, and if the line reported by the committee is an established building line, the value of the mortgaged premises is diminished thereby to the amount of $1,000.

The court, upon the foregoing facts, held that the defendants had failed to show the existence of any building line affecting the land sought to be foreclosed. The sole error alleged in the appeal is based upon this ruling.

*Cornelius T. Driscoll* and *George E. Beers*, for the appellants (defendants Henry B. and Fannie B. Pettes).

*Edward H. Rogers*, for the appellee (plaintiff).

THAYER, J. The appeal raises the single question, whether the facts found show that at the time the land in controversy was sold to Mrs. Pettes there existed a lawfully established building line upon the same which

prohibited the proprietor from building upon the front portion of the lot.

It is clear from the original provisions of the New Haven charter that it was intended that when such building lines were established the fact should appear upon the land records of the town. The written survey, containing a particular description of such line or lines, with the quantity of land on which the proprietor or proprietors are prohibited to build, provided for in § 32, was to be lodged with the town clerk and recorded by him. When this was done, the incumbrance created by the establishment of the line would appear of record in the land records of the town, and would be notice to those acquiring title to the land of the existence of the incumbrance. This accords with the purpose of our recording system.

Under § 13 of the original charter, the court of common council established the building lines. Section 32 directed the way of proceeding to designate and establish them. The Act of 1872 left with the court of common council the power of establishing the lines, but made more definite the method of procedure. Under that Act, when a building line is to be designated, the court of common council is to proceed by a committee of its own number appointed for that purpose. The duties of the committee are pointed out. They are to cause the survey in writing to be made. They are to give notice to proprietors of land to be affected. They are to make a report of all of their doings in the premises to the court of common council. The Act presupposes that the court of common council will decide whether building lines are to be established in any street before the matter of its designation is referred to the committee. For it is only when there is to be a designation that it is to be so referred. In other words, the matter of designation or establishing the building line is not to be left to a com-

mittee with power. It requires that the report, showing all that the committee has done, shall be accepted and approved by the common council, and recorded in the records of the city, before the line is legally designated, or the assessments therefor are due or collectible. Nothing is said in this Act concerning the recording in the town clerk's office of the written survey describing the line, and for that reason it is claimed that such recording was not required subsequent to the passage of the Act of 1872.

It was required by § 32 of the charter of 1869. So much of that section as is inconsistent with the Act of 1872 is repealed by the latter. Any portion of it which is not inconsistent with the Act of 1872 (and the language of the repealing clause indicates that the legislature understood that some portion was not) is not repealed. No inconsistency is shown in the fact that the latter Act is silent as to the matter of recording the survey in the town clerk's office. That Act deals only with the matter of designating the line. Section 13 of the charter of 1869 gave the common council power to establish building lines, and § 32 indicated, in a general way, the proceedings required to designate and establish them. The Act of 1872, as already stated, deals only with the proceedings to be taken to designate the lines, and § 3 of the Act provides that when these proceedings have been pursued, and the committee's report accepted by the common council and recorded in the city records, the "line or lines shall be deemed to have been legally designated," and the assessments of benefits then, and not till then, become payable and may be enforced. This is not saying that the lines are established, that is, made permanent, as against all persons. It is only saying that as between the parties to the proceeding the lines are deemed to be lawfully designated for the purpose of enforcing the payment of benefits assessed and

for prosecuting appeals, under § 5 of the Act, by persons claiming to be aggrieved by such designation or assessment. When the designation is finally determined, the line is to be established and made permanent by causing the written survey to be recorded in the town clerk's office. This was required by the original charter, and we find nothing inconsistent with that provision in the Act of 1872. If this was requisite to the legal establishment of the line, the city could not prevent Mrs. Pettes, as an innocent purchaser, from building beyond the claimed building line if she saw fit. It is found that she and the plaintiff had no knowledge of the claimed existence of this line until she had sold the property to one of the other defendants. The proceedings in the court of common council did not in such case create an incumbrance upon the land as against her.

As there was no record of the survey filed and recorded in the town clerk's office, the claimed building line constituted no lien on the defendants' land, and the case was properly decided.

There is no error.

In this opinion the other judges concurred.