THE TOWN OF WINDSOR *vs*. HENRY D. WHITNEY ET AL.

First Judicial District, Hartford, May Term, 1920.
PRENTICE, C. J., WHEELER, BEACH, GAGER and CASE, JS.

It is the duty of courts to make every presumption and intendment
  in favor of the validity of a legislative Act, and to sustain it un-
  less its invalidity is beyond reasonable doubt.
A town-plan commission created by vote of the town of Windsor pur-
  suant to legislative authority (17 Special Laws, p. 827), was em-
  powered to make surveys and maps of the town, section by sec-
  tion, as need therefor should arise, showing locations for any
  public building, highway, street or parkway layouts, including
  building and veranda lines; these maps were to be lodged for public
  inspection in the town clerk's office, and a hearing had thereon
  after due notice to all interested, with a right of appeal to the
  Superior Court by any one claiming to be aggrieved. The Act
  permitted any landowner in the town to make and file with the
  commission a similar map of his own land, in accordance with
  rules established by the commission, accompanied with a petition
  showing the layout desired by him, and provided that if the com-
  mission did not act upon such map, plans and surveys within
  sixty days, the locations shown thereon should be considered
  as accepted by the commission. Under the terms of the Act no

Windsor *v.* Whitney.

street could be laid out or opened or building or veranda lines established thereon except in conformity with a survey and map approved by the commission and after obtaining a permit from it. The Act explicitly declared that nothing therein was to be construed to grant to the town or to the commission the right to open and make any road, street, highway or parkway shown on the commission's map and to take land therefor, except upon the terms and procedure set forth in the General Statutes. Upon demurrer to a complaint alleging that the defendants were developing a tract of their own land in violation of the provisions of this Act, it was *held:*—

1. That this court must assume that the regulations as to the layout of streets and building lines, and as to the issuance of building permits, were reasonable for that section or locality.

2. That while the Act did not take land, but merely regulated its use by requiring conformity to the plan of the commission in its development, such regulations nevertheless did in a measure deprive the owner of a part of his dominion over his land.

3. That such restriction or deprivation, accomplished under reasonable regulations in the conservation of the public health, safety and welfare, was merely a legitimate exercise of the police power of the State as distinguished from the power of eminent domain.

Eminent domain takes property because it is useful to the public: the police power regulates the use of property or impairs rights therein because the free exercise of these rights is detrimental to the public interest. The line between these two powers is a difficult one to hold, and it is not surprising that they have occasionally been confused.

The "due process" clause of the 14th Amendment of the Federal Constitution does not prevent the State from making all needful regulations for the public welfare, nor does it require compensation to be made, in case these regulations are reasonable, although they do restrict the owner in the use of his property.

The State may regulate any business, or the use of any property, in the interest of the public health, safety, or welfare, and without making compensation, provided this is done reasonably.

The test of whether, in a given case, the individual rights of property are to be subordinated to social rights under the police power, must be made by the court by ascertaining, first, whether the case falls fairly within the police power, and second, whether the means exercised are reasonable in time, place and circumstances, in their quality and extent.

The General Assembly in the exercise of the police power can establish building lines without making compensation where, as in this case, the regulations are reasonable under the circumstances present, and tend to preserve the public health, add to the public safety from fire, and enhance the public welfare by bettering liv-

Windsor *v.* Whitney.

ing conditions and increasing the general prosperity of the neig-h borhood.

The theory of a town commission plan is the wise development of the territory for the future and in the interest of the general public. It seeks to lay out streets when and where the public need them, to have them of adequate width to meet the requirements of the community and of transportation, and to have each street properly related to every other. It also aims to secure sufficient spaces for light and air by the establishment of building lines. Such a plan, if properly carried out, ministers to the health and safety of the community, increases its transportation facilities, and adds to the appearance and wholesomeness of the locality; and, as a consequence, reacts upon the morals and spiritual power of the people who live under its influences.

*(One judge dissenting.)*

Argued May 11th—decided August 5th, 1920.

SUIT to restrain the defendants from establishing and maintaining building and curb lines upon a certain tract of land in the plaintiff town which they were developing, from erecting buildings thereon and from using the streets laid out by them upon said tract for public travel, in alleged violation of a Special Act of the General Assembly creating a town-plan commission—brought to the Superior Court in Hartford County and tried to the court, *Burpee, J.,* upon a demurrer to the complaint; the court sustained the demurrer upon the ground of the unconstitutionality of the Special Act, and subsequently rendered judgment for the defendants, from which the plaintiff appealed. *Error and cause remanded.*

*Josiah H. Peck,* with whom, on the brief, was *Hugh M. Alcorn,* for the appellant (plaintiff).

*Arthur L. Shipman* and *Reinhart L. Gideon,* with whom, on the brief, was *Joseph P. Tuttle,* for the appellees (defendants).

WHEELER, J. The complaint alleges that the town of Windsor raised a commission under the Special Act

of the General Assembly approved April 3d, 1917, concerning a commission on town plan, and that this commission qualified and is acting as such; that the defendants are engaged in developing for residential purposes a tract of land on Barber Street in Windsor, and have opened thereon for public use a street parallel to Barber Street and also two streets opening into Barber Street; that they have established building and curb lines on these streets, have sold for building purposes a number of lots thereon; and that all of these acts have been done in violation of the provisions of the Special Act.

The defendants demurred to the complaint because the Special Act upon which the complaint was based was in violation of § 1 of Article 14th of the Amendments to the Constitution of the United States, in that the acts and requirements of the Special Act constitute a taking of property without due process of law.

The Special Act provides for the creation of a town-plan commission whose duty it shall be to "make surveys and maps of said town [Windsor], section by section, . . . showing locations for any public buildings, highway, street or parkway layouts, including street, building and veranda lines, and may obtain expert advice and assistance in so doing."

When the commission shall have made a survey and map of any section, it shall file it in the town clerk's office, and give notice by mail to every known owner of land in that section and also by public advertisement, of the time for filing objections and for hearing evidence and argument upon said map.

The commission shall thereafter notify each objector of its final action, and file a map in accordance with its final decision in the town clerk's office. Any party interested may appeal within thirty days to the Superior Court, and its decision shall be final.

Section 8 provides: "Nothing herein shall be considered as granting to said town or said commission or said selectmen, any right to open and make any road, street, highway or parkway shown on such map and to take land therefor, except upon the terms and in conformity with the procedure set forth in the general statutes, and also in conformity with any vote, rule, regulation, ordinance or other method of procedure of said town."

This provision safeguards private property against its taking for public use. The mere filing of the final map cannot be regarded as a taking of property. It it but reasonable provision for the future community development. Streets opened in these sections must conform to this plan, adopted, after careful consideration of private and public rights, by public authorities in fulfillment of public duty. When the town or selectmen shall open streets and establish building lines for all land so taken by the public and not under the police power, compensation must be made in the manner provided by the procedure of the General Statutes.

Apparently this Act does not provide for the case of an owner desiring to lay out a street in a section which the commission has already surveyed and mapped. As the case at bar is not such an one, we are not required to resolve that situation.

Section 6 provides: "Any owner of land in said town of Windsor may show on a map . . . locations for highways, streets and parkways on said land with street, building and veranda lines," and indicate in his accompanying petition the layout desired by him. The commission shall pass on the same by the procedure of § 3, and if they do not accept or reject the plan and petition in sixty days they shall be considered as accepted. We think that by reference to the procedure

of § 3, it was intended to include the appeal provided in § 4 from the decision reached in § 3. This procedure is inseparably connected, affording to the parties in interest an adequate hearing and decision by designated public officials, with an appeal to our highest trial court. Both tribunals determine in the given case what the location of street layouts and building lines shall be.

Penalties are imposed for failure to proceed under this section and for erecting a building on a street or proposed street whereon a building line has been established without securing a permit from the commission in accordance with § 9. The case against the defendants is based upon their proceeding in the development and marketing of their lots without reference to §§ 6 and 9.

The Act does not contemplate the taking of a part of the defendants' land for streets, nor the taking of a part of their lots by means of a regulation that they may not build upon a part of the lot up to a designated building line. What it intends is the regulation of the defendants' land, so that in case they build thereon the streets and building lines must conform to the plan approved by the commission. The commission does not impose upon the defendants the burden of laying out any street or designating any building line. It leaves it optional with them whether they shall open the street or designate the building line. This does not physically take the land, but it regulates its use, and hence it deprives the owner of a part of his dominion over his land. The owner may not lay out streets through his land where he chooses and of the width he chooses; nor may he establish the building lines where he wills. There is no provision in the Act for compensation for such interference with the owner's dominion.

Unless this regulation can be supported as a legitimate

exercise of the police power, the Act must fall. A town commission plan such as this Act contemplates is distinctly for the public welfare. Its theory is to lay out streets when and where the public need them, and of adequate width to meet the requirements of the community and of transportation. In such a plan each street will be properly related to every other street. Building lines will be established where the demands of the public require. Adequate space for light and air will be given. Such a plan is wise provision for the future. It betters the health and safety of the community; it betters the transportation facilities; and it adds to the appearance and wholesomeness of the place, and as a consequence it reacts upon the morals and spiritual power of the people who live under such surroundings. The demands of a large city may excuse congestion, but in a small city or a country town there is no excuse for such living conditions. But unless some authority controls and regulates the land development, we may look for too narrow streets, too few or no building lines, and buildings erected, unstable in character, unsuitable in material, and inappropriate in construction. Our large communities all have their examples of the unregulated layout of streets and building lines and buildings; of instances of land development so as to yield the last penny to its promoters regardless of the public welfare; of community eyesores; of streets made over, whole sections changed, because at the beginning no reasonable provision was made for the safety, health or welfare of the community

Such an Act as this is conceived in public wisdom and serves great public ends. Courts will be reluctant to destroy it and with it its beneficent purposes. We should not do that unless we were clearly satisfied that the Act was against our fundamental law, or was

so unreasonable as to be beyond the range of the police power. It is to be noted that we are not concerned in this case with the question of reasonableness, nor with the question of regulation under uniform rule of action. The question raised by the demurrer in *Ingham* v. *Brooks, ante,* p. 317, is not involved: first, because the demurrer under review raises a single question, whether the Act is unconstitutional because it takes property without compensation; second, the Act itself provides for the making of general rules by the commission, and in the absence of allegation to the contrary we must assume that these rules exist; and third, because since the decision of the commission proceeds upon a full and fair hearing and its decision is reviewable by a court of competent jurisdiction which acts under the sanction of law, the decision cannot be held to be one left to the unregulated will of this commission. We must assume that the regulations as to the layout of the streets and building lines, and as to the issuance of building permits, are reasonable for that section and location.

So that the question raised by the demurrer is this: Does this Act, which forbids the opening of a street or the establishment of building lines which are reasonable as to location and size, so interfere with the use of private property as to be unconstitutional for the reason that it takes private property without compensation? "It is our duty to approach the question with great caution, examine it with infinite care, make every presumption and intendment in its favor, and sustain the Act unless its invalidity is, in our judgment, beyond reasonable doubt." *Beach* v. *Bradstreet,* 85 Conn. 344, 349, 82 Atl. 1030. Streets properly located and of suitable width help transportation, add to the safety of travel, furnish better protection against fire, and better light and air to those who live upon the

streets. They afford better opportunities for laying, maintaining and inspecting water, sewer, gas and heating pipes, and electric and telephone conduits in the streets. They give opportunity for sidewalks of reasonable width and for shade trees along the highway. Streets of reasonable width add to the value of the land along the street, enhance the general value of land and buildings in the neighborhood and greatly increase the beauty of the neighborhood. These are all facts of universal knowledge.

The layout of a street or highway by a private person and the regulation of its width, unless determined otherwise by authority, has been a part of our statute law since 1899     General Statutes, § 1436, provides: "No person, company or corporation, excepting municipal corporations, shall lay out any street or highway in this state less than three rods in width, unless with the prior written approval of a majority of the selectmen of the town, or of the burgesses of the borough, or of the common council of the city, wherein such street or highway is located." The constitutionality of this provision has never been questioned, so far as we are aware of, in a litigated case. In the Town Plan Commission Act of 1917, a commission was given similar powers over privately owned land. Public Acts of 1917, Chap. 349 (General Statutes, §§ 391–396). These statutes indicate the legislative conviction that acts such as these are within the legitimate exercise of the police power. Narrow streets in congested industrial centers breed disease. Too many houses crowded upon a lot without sufficient space for light and air menace health. Such a neighborhood affects the morals of its people. The sordid selfishness which would insist upon making the street a mere alley, upon getting houses upon land without regard to reasonable provision for air and light, must be restrained if the

public welfare is to be preserved. The State is vitally interested in the health of its citizens, for upon their strength rests its own well-being. It or its agent, the town, must provide fire and police protection to all settled parts. The State and its agent, the town, cannot preserve and protect the rights committed to it if private owners may lay out streets at will and build at will. Uniformity in plan or relation of one street to others will be absent. The practical loss to the community will be large and the loss in neighborhood appearance will be immeasurable.

The Act does not prohibit the owners from the use of any of their land, except in case they purpose opening streets and selling lots thereon. In which case they lose the use of so much of their land as is contained in the street limits and is in excess of what they purposed laying out as a street, and of so much of the land as the building line prevents their use of for building purposes. If the prohibition of the Act deprived an owner of the use of any part of his land and this was not needed for the public health, safety, or welfare, there would be a plain violation of the constitutional provision. But where it is so needed, and that is the case before us, the subjection to the police power of all property gives the State the right to forbid the use of property in the way desired, save under reasonable conditions promoting the public welfare. The State may regulate the use of property to the point of forbidding thereon certain businesses in themselves lawful, as in the case of slaughter-houses and cemeteries. It may regulate building in the interest of health and fire safety. It may limit the height of buildings in certain districts or the character of the buildings in these districts. It may prevent the erection of billboards or limit their height. In short, it may regulate any business or the use of any property in the interest

of the public health, safety or welfare, provided this be done reasonably. To that extent the public interest is supreme and the private interest must yield.

Eminent domain takes property because it is useful to the public. The police power regulates the use of property or impairs the rights in property, because the free exercise of these rights is detrimental to public interest. Freund on Police Power, § 511. It is upon this principle that the State has the right to say, if you lay out streets in the development of your land for building purposes you must make them of reasonable width and you must establish reasonable building lines, for thereby will you protect the public health and safety and the public welfare.

As a rule, building lines have been held to be a taking of property because they impair the use of ownership of land over which building is prohibited. *St. Louis* v. *Hill*, 116 Mo. 527, 22 S. W. 861, is perhaps the most often-cited case to this point. The question has not been of the utmost practical importance in New England, for as a rule our municipal charters provide compensation. In practice, the benefits and damages are assessed as equal. "He who is not injured by the operation of a law or ordinance cannot be said to be deprived by it of either constitutional right or of property." *Cusack Co.* v. *Chicago*, 242 U. S. 526, 530, 37 Sup. Ct. 190.

Nowhere, so far as we can ascertain, has the specific case been before the court which the record in this case presents. The building line in these other cases was not specifically found to have been run in the interest of public safety and health and for the public welfare. That is this case. If a building line six feet from an owner's street line will tend to preserve the public health, add to the public safety from fire, and enhance the public welfare by bettering living conditions and

increasing the general prosperity of the neighborhood, can it be run by legislative authority in the exercise of the police power, when such an exercise of the police power is reasonable under the circumstances of the case? We hold that it can, and that this is not a taking of property in violation of constitutional right for which compensation must be made.

The body of the law upon the subject of the police power is the growth of comparatively recent years. It has been said to be still in the formative stage. The line between eminent domain and the police power is a hard one to hold with constancy and consistency, and it is not surprising that now and again these two great powers of government have been confused. A few years ago it was, so far as the rule had been announced, undoubted that restrictions could not be imposed upon private property solely for æsthetic considerations. Later it has been said by high authority that æsthetic considerations may be regarded in connection with recognized police power considerations. And now Dillon, in the latest edition of his Municipal Corporations, § 695, says: "The law on this point is undergoing development, and perhaps cannot be said to be conclusively settled as to the extent of the police power." *Welch* v. *Swasey,* 214 U. S. 91, 29 Sup. Ct. 567, affirming 193 Mass. 364, 79 N. E. 745, tends to justify the author's conclusion. Where the free exercise of one's rights of property is detrimental to the public interest, the State has the right to regulate reasonably such exercise of control under the police power. And that, of course, means, without compensation. The regulation of the location and width of streets and the establishment of building lines, is by no means as much of an impairment of the right to use property as are the provisions of our statutes regulating tenement houses and lodging-houses. General Statutes,

Chapters 133 and 134. These limit the area of the lot which the tenement house shall occupy. They provide for rear yards. They regulate the air space, light and ventilation of rooms. And in many other ways the State restricts the use of such property by an owner. Regulations of this character, if reasonable, do not constitute a taking of property.

The "due process" clause does not prevent the State from making all needful regulations for the public welfare, and does not require compensation to be made in case these regulations are reasonable, although they do deprive the owner of the use of his property. *Cusack Co.* v. *Chicago*, 242 U. S. 526, 37 Sup. Ct. 190. There need be no fear that individual rights will be unduly subordinated to social rights, for each claimed exercise of the police power is subject, first, to the test of whether the case falls fairly within the subjects of the police power, and second, whether the means exercised, in quality and extent, are reasonable, reasonable in time, place and circumstance; and both tests are made and ascertained by the courts.

A legislative requirement, such as the Act before us, that private highways laid out in land development schemes shall be of a reasonable width and that reasonable building lines shall be established upon these streets before the erection of buildings fronting upon these streets shall be permitted, is well within the police power and does not offend against the Fourteenth Amendment. It is supported and sustained by the principle stated by Chief Justice Shaw in *Commonwealth* v. *Alger*, 61 Mass. (7 Cush.) 53, 84: "We think it is a settled principle, growing out of the nature of well ordered civil society, that every holder of property, however absolute and unqualified may be his title, holds it under the implied liability that his use of it may be so regulated, that it shall not be injurious

to the equal enjoyment of others having an equal right to the enjoyment of their property, nor injurious to the rights of the community."

There is error, the judgment is set aside and the cause remanded to be proceeded with according to law.

In this opinion PRENTICE, C. J., BEACH and CASE Js., concurred.

GAGER, J. (dissenting in part). The majority opinion holds, in part, that the establishment of a reasonable building line is not "a taking of property in violation of constitutional right for which compensation must be made." From this I dissent. The argument seems to be that such a restriction is an exercise of the police power and not of the power of eminent domain. The adoption of the term "police power" as a substitute for "eminent domain," appears to be an attempt to change the character of the act by adopting a hitherto unused designation for what is at all times the same act, to wit: a taking of private property for public use within the meaning of the constitutional provision generally, and of § 11 of our Declaration of Rights. That such designation of a building line comes under the eminent domain power has hitherto been assumed by the legislature of this State to be unquestioned law, and all its legislation has been based on that assumption. Indeed, in the opinion in this case it is admitted that such is the law generally, and that as a rule municipal charters have provided for compensation. In 1 Lewis on Eminent Domain (3d Ed.) § 227, citing *St. Louis* v. *Hill*, 116 Mo. 527, 22 S. W. 861, and other cases, it is stated as the rule that a law or ordinance establishing a building line "deprives the owner of the lawful use of his property, and amounts to a taking thereof within the meaning

of the Constitution, and . . . can only be carried out by making provision for the compensation of the owner. In commenting upon such an ordinance, the Supreme Court of Missouri, in the case cited, says: 'The day before the ordinance went into operation defendant had the unquestionable right to build at will on his lot. The day afterwards he was as effectually prevented from building on the forty foot strip, except under the peril of punishment, as if the city had built a wall around it, and this, too, without any form of notice, any species of judicial inquiry, or any tender of compensation. If this is not a " taking" by mere arbitrary edict, it is difficult to express in words the meaning which should characterize the act of the city.' " I had supposed that, both in reason and upon authority, this was thoroughly well-settled law, not only in Connecticut but throughout the United States. As an economic fact the proposition does not seem to me open to discussion. *Northrop* v. *Waterbury*, 81 Conn. 305–309, 70 Atl. 1024, regards the establishment of a building line as a taking of property. *Benedict* v. *Petties*, 85 Conn. 537, 84 Atl. 332, clearly states that the establishment of a building line creates an incumbrance. The argument which attempts to show that establishing a building line is not within the constitutional meaning of the taking of private property is opposed to our own decisions and legislative assumptions. "Reasonableness," so much dwelt upon by the court, does not determine whether there is a taking. The Constitution does not limit its protection to an unreasonable taking. On the contrary, it assumes a reasonable taking. Any other is wholly unjustifiable. Moreover, the "reasonableness" talked about in the opinion is not a reasonableness as to a single owner, but a reasonableness of the entire line with reference to the needs of the municipality as a whole. Otherwise, uniformity

in the line could seldom result. In *Pumpelly* v. *Green Bay Co.*, 80 U. S. (13 Wall.) 166, 177, the Supreme Court of the United States said: "It would be a very curious and unsatisfactory result, if in construing a provision of constitutional law, always understood to have been adopted for protection and security to the rights of the individual as against the government, and which has received the commendation of jurists, statesmen and commentators, as placing the just principles of the common law on that subject beyond the power of ordinary legislation to change or control them, it shall be held that if the government refrains from the absolute conversion of real property to the uses of the public it can destroy its value entirely, can inflict irreparable and permanent injury to any extent, can, in effect, subject it to total destruction without making any compensation, because, in the narrowest sense of that word, it is not *taken* for the public use. Such a construction would pervert the constitutional provision into a restriction upon the rights of the citizen, as those rights stood at the common law, instead of the government, and make it an authority for the invasion of private right under the pretext of the public good, which had no warrant in the laws or practices of our ancestors."

I do not at all question the desirability of suitable building lines. Nor do I question the power of the State constitutionally to establish them under the eminent domain doctrine. The repeated argument in the opinion as to the desirability of building lines may all be admitted. It by no means follows that the establishment of such a line is not a taking of property. The question in the case is not at all the desirability of such a line, but its effect, when established, upon property rights. Upon this point the United States Supreme Court said, in *Chicago, B. & Q. Ry. Co.* v.

*Drainage Commissioners*, 200 U. S. 561, 592, 26 Sup. Ct. 341: "The validity of a police regulation, whether established directly by the state or by some public body acting under its sanction, must depend upon the circumstances of each case and the character of the regulation, whether arbitrary or reasonable and whether really designed to accomplish a legitimate public purpose. Private property cannot be taken for public use under a police regulation relating strictly to the public health, the public morals or the public safety, any more than under a police regulation having no relation to such matters, but only to the general welfare. . . . The constitutional requirement of due process of law, which embraces compensation for private property taken for public use, applies in every case of the exertion of governmental power. If in the execution of any power, no matter what it is, the Government, Federal or State, finds it necessary to take private property for public use, it must obey the constitutional injunction to make or secure just compensation to the owner." What I do insist upon is, that if the establishing of such a line does, in the judgment of a properly-constituted tribunal, in fact damage an owner by a taking of his property, to the extent of that damage he is entitled to compensation.

By the opinion in this case, if the owner sustains such damage as matter of fact, he is yet compelled to contribute that as a private owner and not as a member of the public at large. He is not even allowed to raise the question of damage. But this is a taking of property without compensation. Calling what in fact is an exercise of the right of eminent domain, an exercise of the police power, does not avoid the constitutional question. Building lines are ancillary to highways and in effect extend the width of highways for the purposes, not indeed of literal travel, but of light, air,

and freedom of view. A somewhat similar case is that of *Matter of Clinton Avenue*, 57 N. Y. App. Div. 166, 68 N. Y. Supp. 196; the court says (p. 172): "Conceding that the legislature has the power to increase the width of Clinton Avenue, that it would be justified in taking possession of private property for this purpose upon the payment of just compensation, we are of opinion that it has a right to take a lesser estate in the property than would be necessary for a complete dedication to the use of the public, and that the use is none the less public to the extent to which the property is taken because it is left in the partial control of the present owners. The right that is proposed to be taken is not the right to walk or ride over these particular additions to the width of the avenue, but to afford ' ample space for the access of light and air and also to beautify and adorn.' *Matter of Curran*, 38 App. Div. 82, 55 N. Y. Supp. 1018. 'A street may,' to quote the same case, 'in part unite the two purposes, one to furnish a way for travel and the other as a park or public place.' It may hardly be questioned that the legislature may authorize the taking of any part of this right which it may deem advantageous to the public, on the payment of just compensation. 10 Amer. & Eng. Ency. of Law (2d Ed.) 1088, and authorities there cited. This is in harmony with the opinion of the court in *Matter of Bushwick Avenue*, 48 Barb. 9, which is very similar to the case at bar, where the court below held (p. 12) that 'the taking of twenty feet on each·side of the avenue and the appropriation of the same as court yards *only*, is such a taking as will justify an appraisement of damages therefor. A dominion is asserted over this land by the public to the extent of depriving the owner of his right to use and enjoy the same for any other purpose than a court yard. It is so far. taken for public use and is a subject for com-

pensation. See *Sage* v. *Brooklyn,* 89 N. Y. 189, 198."
I will admit that in a majority of cases, as stated in the
opinion, benefits and damages may fairly be assessed
as equal. This is not because there is not a taking
between the building line and the street line, but be-
cause the owner has left a lot of such depth that what
is left is still available for building purposes and may be
increased in value by the improvement to the street as
a whole. But the constitutional provision relates to
the land within the restricted area alone. Its appli-
cation does not depend upon what other land the owner
may have. A lot may be so shallow that what is left
is not benefited, but becomes practically worthless.
That is a question of fact. The constitutional prin-
ciple must apply as if the lot within the restricted area
were the entire lot. It needs no argument to show that
a restriction against building at all on a given lot is a
serious invasion of property right. Regarding the
establishment of such a line as an exercise of the right
of eminent domain, neither the owner nor the public
can ever be harmed. Treating it as a mere exercise
of the police power, may cause serious harm to the
owner. Whether there is benefit or damage is, as to a
given lot, a question of fact to be determined by a
proper tribunal in which the property owner is given
a chance to be heard; it is not a question of law to be
determined according as to whether you call the act,
which is at all times one and the same, an exercise of
the police power or of the right of eminent domain.

The Act in question (Special Laws of 1917, p. 827)
appears to be the only Act ever passed by our legis-
lature, with the possible exception of the Bloomfield
Act passed at the same session, which attempts to
confer upon any municipality or board the power to
establish building lines without provision for compen-
sation. The Seymour Town Plan Commission Act,

passed at the same session, provides for compensation. At the same session was passed the General Act, Chapter 349 of the Public Acts of 1917, subsequently incorporated in the General Statutes as Chapter 26, entitled Town Plan Commission, authorizing any town to establish a town plan, and this statute provides a method for ascertainment of benefits and damages in case of the adoption of building and veranda lines. The general act was approved May 16th, 1917, more than a month after the approval of the Windsor Act, and seems quite oblivious of the terms of the Windsor Act. So far as I know, municipal charters which authorize the establishment of building lines uniformly provide for the assessment of benefits and damages, and treat the establishment of a building line as a taking of land. For instance, the charters of Stamford, Meriden and Shelton, all revised in 1915, provide for compensation in case of the establishment of building lines. The charter of the city of Bridgeport, revised in 1907, so provides, and so do the charters of New Haven, Hartford, and other cities. We have not been referred to any legislative provision, except the Windsor and possibly the Bloomfield Act, which authorizes the establishment of building lines without providing for compensation. In view of the Seymour Act and the general statute authorizing town plan commissions, passed at the same session as the Windsor Act, both providing for compensation, the inference is strong that in some way the Windsor Act slipped by without the legislature having adverted to the fact that it failed to so provide. For it can hardly be supposed that the legislature, at the same session, advisedly intended to say that in Windsor and Bloomfield the establishment of a building line was a pure police measure not entitling an owner to compensation, while for all other towns and municipalities it was an exercise

of the right of eminent domain entitling the owner to compensation under the Constitution. The Town Plan Acts are beneficial in character and should be given a liberal construction, but every purpose of the Acts can be fully accomplished in the methods hitherto provided by our municipal charters and provided in the general statute authorizing building lines and Town Plan Commissions, without extending the scope of the police power to the radical impairment of a fundamental constitutional right, hitherto universally recognized.

For these reasons, briefly stated, I think the majority opinion is wrong in principle and is quite unnecessary for the accomplishment of the results urged as the ground of the decision, and therefore dissent.