ABRAHAM A. FIGARSKY ET AL. *v.* HISTORIC DISTRICT COMMISSION OF THE CITY OF NORWICH

HOUSE, C. J., COTTER, LOISELLE, BOGDANSKI and BARBER, Js.

Argued April 13—decision released June 15, 1976

*Milton L. Jacobson,* with whom were *Jackson T. King, Jr.,* and *Donald R. Beebe,* for the appellants (plaintiffs).

*Geurson D. Silverberg,* with whom was *Richard N. Ziff,* for the appellee (defendant).

*Russell L. Brenneman* filed a brief as amicus curiae.

BARBER, J. The plaintiffs, owners of a house and lot located within the Norwich historic district, appealed to the Court of Common Pleas from a decision of the defendant commission denying their application for a certificate of appropriateness which would permit them to demolish the house. The court rendered judgment dismissing the appeal and the plaintiffs, upon the granting of certification, have appealed to this court.

The undisputed facts of the case are as follows: The Norwich historic district, established by the city of Norwich in 1967, pursuant to §§ 7-147a through 7-147m of the General Statutes, consists of the Norwichtown green, which dates back to colonial days, and about one hundred buildings and lots surrounding, or in close proximity to, the green. The plaintiffs' property, which they purchased in 1963,

is a two-story building zoned for commercial uses and is located just inside the bounds of the district. The property faces the green but is bounded on two sides by a McDonald's hamburger stand and parking lot. The building is in need of some repairs, which the Norwich building inspector has ordered the plaintiffs to undertake. Rather than make the repairs, however, the plaintiffs would prefer to demolish the building. In August, 1972, the plaintiffs applied to the building inspector for a demolition permit. The building inspector informed the plaintiffs that before such a permit could be issued a certificate of appropriateness was required. The plaintiffs, therefore, applied to the defendant for a certificate, filing their application with the building inspector on November 29, 1972. The defendant held a public hearing on the application on January 25, 1973. The hearing was attended by more than 100 persons, none of whom, except for the plaintiffs and their attorney, spoke in favor of granting the application. On the following day, the commission voted unanimously to deny the plaintiffs' application.

The plaintiffs maintain that the costs of the repairs necessary for the building are prohibitive. The building inspector has ordered the plaintiffs to repair the foundation and replace a door sill and hall floor, and the health department has ordered the plaintiffs to tie in to a newly accessible public sewer. At the hearing before the commission, the plaintiffs offered the testimony of a local contractor to the effect that the cost of these repairs, together with the cost of reroofing the building, would amount to between $15,000 and $18,000. The plaintiffs offered no evidence of the value of the house without repairs, its value if repaired, or the value of the lot if the building were razed. Nor did the

plaintiffs disclose to the commission the use which they intended to make of the lot if the building were razed.

The commission also received numerous opinions from the plaintiffs' neighbors and from the Connecticut historical commission, the southeastern Connecticut regional planning agency, and the Connecticut society of architects, as to the historic value of the premises. The consensus of these opinions was that although the building itself is of little historic value or interest, it does, by virtue of its location, perform an important screening function, separating the green from an encroaching commercial district, and its preservation is important in maintaining the character of the historic district.[1] The commission stated its reasons for denying the application as follows: "The Commission is of the opinion that the building in question significantly contributes to the importance of the Norwichtown Green as an historic landmark, and the Commission would have violated its responsibilities as

[1] A communication from the state historical commission stated, in part: "Competent authority has placed the date of construction in or about 1760 and identified the owner at that period as keeping an inn where lawyers at the nearby Court of Norwich were accommodated. On the exterior at least, the structure has undergone considerable alteration over the years but still retains its essential form and proportions, wholly in keeping with the scale and appearance of numerous other old buildings that border the Green area. Aside from the house proper, its site is of historic interest as occupying the original home lot of the Reverend James Fitch, religious leader of the first settlers. It often happens that buildings forming a recognizable grouping, as around a green, may not individually be especially notable for architecture or historical association. But together as a unified whole they constitute a significant entity, no part of which can be removed without a definite and usually adverse effect upon the character and appearance of the entire area. This is the condition that obtains in Norwichtown.

"The commercially zoned district south and southeast of the site under consideration exhibits the unattractive characteristics of so

defined in . . . [§§ 7-147a—7-147k] to have permitted its demolition. In weighing all the considerations concerning this Application, the Commission was cognizant of . . . [§ 7-147g, pertaining to permissible variations], but concluded that the hardships presented by the Applicant were not of sufficient magnitude to warrant granting approval for demolition."

Procedure upon an appeal from any decision of a historic district commission is the same as that for appeals from zoning boards. General Statutes § 7-147i. The controlling question which the trial court had to decide was whether the historic district commission had acted, as alleged in the appeal, illegally, arbitrarily and in abuse of the discretion vested in it. *Bogue* v. *Zoning Board of Appeals*, 165 Conn. 749, 752, 345 A.2d 9; *Byington* v. *Zoning Commission*, 162 Conn. 611, 613, 295 A.2d 553. Since the trial court decided the appeal solely on the record returned by the commission and made only a limited finding of facts on the issue of aggrievement, review by this court must be based on the record of the proceedings before the commission to determine whether the commission's decision is

many such areas, with disparate structures of poor design uncoordinated with one another and obtrusive advertising signs. It stands close upon the boundaries of the local historic district. If the property at 86 Town Street were demolished, it would remove the most important screening element between these evidences of low-grade commercialism and the attractiveness of the largely unspoiled Green. State recognition of the importance of this land has recently been affirmed by the erection of an historical marker under auspices of this Commission, which details the history of early years in Norwich and the central role of the Green in that history. Nomination of the entire area has been made to the National Register of Historic Places maintained by the Office of Archeology and Historic Preservation, National Park Service, United States Department of the Interior, under the National Historic Preservation Act of 1966, Public Law 89-665."

reasonably supported by the record. *Danseyar* v. *Zoning Board of Appeals,* 164 Conn. 325, 327, 321 A.2d 474; *Langer* v. *Planning & Zoning Commission,* 163 Conn. 453, 460, 313 A.2d 44.

In their appeal, the plaintiffs allege that they will be forced to undergo economic hardship and loss as a result of not being permitted to demolish their building, and that the historic district commission, in denying their application for a certificate of appropriateness, acted illegally, arbitrarily and in abuse of its discretion. Several claims of law which were overruled by the trial court are assigned as error.

We first consider two claims of error concerning the procedure followed by the historic district commission in denying the plaintiffs' application. The plaintiffs contend that the commission did not comply with the notice requirements of the right-to-know law; General Statutes § 1-21; nor did it meet the time limitations set forth in the town ordinances pertaining to the processing of applications for certificates of appropriateness, §§ 14-24 and 14-25 of the Norwich code of ordinances. Section 1-21 requires, in pertinent part, that notice be given twenty-four hours before a special meeting is held by a commission such as the defendant, but the same section also provides that an emergency meeting may be held without notice, so long as the minutes of the meeting are quickly made available for public inspection. Section 14-24 of the town ordinances requires the historic district commission to hold a public hearing within forty-five days of receiving an application for a certificate of appropriateness, and § 14-25 provides that the failure of the commission to act upon an application within sixty days shall constitute approval.

The record reveals that the plaintiffs' application was filed with the building inspector (but not with the historic district commission) on November 29, 1972. The public hearing was held fifty-eight days later, on Thursday, January 25. At the time of the public hearing, the commission apparently intended to meet for a vote on the application on the following Monday, January 29, and the plaintiffs were so informed. A ruling by the corporation counsel, communicated to the commission, indicated that the sixty-day limitation fixed by § 14-25 might be construed as commencing with the filing of the application with the building inspector, in which case the sixty-day period would expire on January 27. An emergency meeting of the commission was, therefore, held, without public notice, on January 26, and the commission voted to deny the application. On the same day, notice of the decision was given to the plaintiffs' counsel and the minutes of the meeting were made available for public inspection. The commission met as scheduled on January 29, and, in the minutes of that meeting, set out the reasons for its decision to deny the application.

Although the commission did not give the twenty-four-hour notice mandated by § 1-21 for special meetings of a municipal commission, the record clearly indicates, as noted by the trial court, that the commission did comply with the requirements of § 1-21 pertaining to emergency meetings. The record also clearly indicates that the plaintiffs' counsel received actual notice of the commission's decision within sixty days of the filing of the application. And though the hearing was not held within forty-five days of the filing of the application with the building inspector, § 14-24 sets a time limit which commences with the receipt of the application by

the historic commission, the date of which does not appear in the record. In any event, the time limit for a hearing is analogous to similar provisions governing zoning procedures, which provisions we have construed as being directory rather than mandatory. *Morningside Assn.* v. *Planning & Zoning Board*, 162 Conn. 154, 157, 292 A.2d 893; *Donohue* v. *Zoning Board of Appeals*, 155 Conn. 550, 554, 235 A.2d 643.

The plaintiffs also claim that the Norwich ordinance does not vest the commission with the power to regulate the demolition of structures within the historic district. In support of this contention, the plaintiffs point out that § 14-20 of the ordinance provides that the commission "shall administer the provisions of . . . [the enabling act] *as implemented by this article*" (emphasis added), and that the ordinance itself does not mention "demolition." In the absence of any specific reference in the ordinance to the power to control the demolition of structures, the plaintiffs argue, no such power has been granted the commission. Section 14-17 of the ordinance, however, provides that the commission "shall be empowered to exercise all the powers and duties and functions enumerated in such sections 7-147a to 7-147k, inclusive, as amended, of the general statutes." This language incorporates by reference § 7-147d (a) of the General Statutes which declares that "[n]o building or structure shall be . . . demolished within an historic district until after an application for a certificate of appropriateness . . . has been . . . approved by said commission." Furthermore, § 14-24 of the ordinances provides that "[n]o work on any type of building or structure which would change the appearance of any building or structure within the historic district when viewed

from the street line shall be begun until the owner has filed an application with the building official and has received a certificate of appropriateness from the historic district commission." Certainly the demolition of the plaintiffs' building would qualify as "work . . . which would change the appearance of" a building located within the district. There is no merit to the plaintiffs' claim that the ordinance does not empower the commission to consider applications of appropriateness pertaining to the demolishing of a building or structure.

The plaintiffs' principal claim is that the Norwich historic district ordinance, implementing the state enabling act, is unconstitutional as applied to them, and that the denial of their application for a certificate of appropriateness to demolish their building amounts to a taking of their property for public use without compensation. More specifically, they contend that the ordinance is "vague aesthetic legislation," incapable of application in accordance with mandates of due process, and that because of the denial of their application they will be forced to expend large sums in the maintenance of their property without being able to put it to any practical use.

Neither the constitution of the United States, amendments five and fourteen, nor the constitution of Connecticut, article first, § 11, deny the state the power to regulate the uses to which an owner may devote his property.

"All property is held subject to the right of government to regulate its use in the exercise of the police power, so that it shall not be injurious to the rights of the community, or so that it may promote its health, morals, safety and welfare. The power of regulation by government is not unlimited;

it cannot, as we have stated, be imposed unless it bears a rational relation to the subjects which fall fairly within the police power and unless the means used are not within constitutional inhibitions. The means used will fall within these inhibitions whenever they are destructive, confiscatory, or so unreasonable as to be arbitrary. *Euclid* v. *Ambler Realty Co.,* 272 U.S. 365, 47 Sup. Ct. 114 [71 L. Ed. 303]. Regulations may result to some extent, practically in the taking of property, or the restricting its uses, and yet not be deemed confiscatory or unreasonable. Courts will not substitute their judgment for the legislative judgment when these considerations are fairly debatable. They will regard their validity . . . from the standpoint of existing conditions and present times." *State* v. *Hillman,* 110 Conn. 92, 105, 147 A. 294. When, as here, a legislative enactment is challenged in its application as beyond the scope or as an abuse of the state's police power, two issues are raised: first, whether the object of the legislation falls within the police power; and second, whether the means by which the legislation attempts to reach that object are reasonable. *Windsor* v. *Whitney,* 95 Conn. 357, 369, 111 A. 354.

"To be constitutionally valid, a regulation made under the police power must have a reasonable relation to the public health, safety, morality and welfare." *State* v. *Gordon,* 143 Conn. 698, 703, 125 A.2d 477; *DeMello* v. *Plainville,* 170 Conn. 675, 679, 368 A.2d 71. No contention is made that the historic district ordinance contributes to the health or safety of the public; our inquiry is limited to whether the preservation of historic areas in a static form serves the amorphous concept of "the public welfare." See *Opinion of the Justices,* 333 Mass. 773, 778, 128 N.E.2d 557. "The concept of

the public welfare is broad and inclusive. . . . The values it represents are spiritual as well as physical, aesthetic as well as monetary. It is within the power of the legislature to determine that the community should be beautiful as well as healthy, spacious as well as clean, well-balanced as well as carefully patrolled." *Berman* v. *Parker,* 348 U.S. 26, 33, 75 S. Ct. 98, 99 L. Ed. 27. It is apparent from the language of the enabling statute[2] that the General Assembly, in enacting those statutes, was cognizant not only of the intangible benefits to be derived from historic districts, such as an increase in the public's awareness of its New England heritage, but of the economic benefits to be reaped as well, by augmenting the value of properties located within the old sections of the state's cities and towns, and encouraging tourism within the state. In a number of recent cases, it has been held that the preservation of a historical area or landmark as it was in the past falls within the meaning of general welfare and, consequently, the police power. See, e.g., *Maher* v. *New Orleans,* 516 F.2d 1051, 1060 (5th Cir.); *Annapolis* v. *Anne Arundel County,* 271 Md. 265, 316 A.2d 807; *Lutheran Church in America* v. *City of New York,* 35 N.Y.2d 121, 316 N.E.2d 305; *Rebman* v. *Springfield,* 111 Ill. App. 2d 430, 250 N.E.2d 282; *Opinion of the Justices,* supra, 773; see 1 Rathkopf, Zoning and Planning (4th Ed.), c. 15; 82 Am. Jur. 2d, Zoning and Planning, § 40. We cannot deny that the preservation

---

[2] "[General Statutes] Sec. 7-147a. HISTORIC DISTRICTS AUTHORIZED. . . . to promote the educational, cultural, economic and general welfare of the public through the preservation and protection of buildings, places and districts of historic interest by the maintenance of such as landmarks in the history of architecture, of the municipality, of the state or of the nation, and through the development of appropriate settings for such buildings, places and districts. . . ."

of an area or cluster of buildings with exceptional historical and architectural significance may serve the public welfare.

The plaintiffs argue that the Norwich ordinance constitutes "vague aesthetic legislation," and point to our statement in *DeMaria* v. *Planning & Zoning Commission,* 159 Conn. 534, 541, 271 A.2d 105, that "vague and undefined aesthetic considerations alone are insufficient to support the invocation of the police power," and our dictum to the same effect. *Gionfriddo* v. *Windsor,* 137 Conn. 701, 704, 81 A.2d 266. The "aesthetic considerations" involved in the Norwich ordinance are not, however, "vague and undefined"; § 7-147f of the General Statutes, incorporated by reference into the ordinance, sets out with some specificity the factors to be considered by the commission in passing upon an application for a certificate of appropriateness.[3]   Nor, as we pointed out in the preceding discussion, do "aesthetic considerations alone" provide the basis for the ordinance.   Furthermore, as long ago as *Windsor* v.

---

[3] "[General Statutes] Sec. 7-147f. CONSIDERATIONS IN DETERMINING APPROPRIATENESS.   If the commission determines that the proposed erection, construction, restoration, alteration, razing or parking will be appropriate, it shall issue a certificate of appropriateness.   In passing upon appropriateness as to exterior architectural features the commission shall consider, in addition to any other pertinent factors, the historical and architectural value and significance, architectural style, general design, arrangement, texture and material of the architectural features involved and the relationship thereof to the exterior architectural style and pertinent features of other structures in the immediate neighborhood.   In passing upon appropriateness as to parking, the commission shall take into consideration the size of such parking area, the visibility of cars parked therein, the closeness of such area to adjacent buildings and other similar factors.   A certificate of appropriateness may be refused for any building or structure, the erection, reconstruction, restoration, alteration or razing of which, or any parking which, in the opinion of the commission, would be detrimental to the interest of the historic district."

*Whitney,* 95 Conn. 357, 368, 111 A. 354, we commented that the question of the relationship between aesthetics and the police power was not a settled question. In *State* v. *Kievman,* 116 Conn. 458, 465, 165 A. 601, we stated that a land use regulation was not invalid simply because it was based in part on aesthetic considerations. And in *Murphy, Inc.* v. *Westport,* 131 Conn. 292, 302, 40 A.2d 177, we indicated that aesthetic considerations may have a definite relation to the public welfare. Although we need not directly decide the issue in the present case, we note that other jurisdictions have recognized that "aesthetic considerations alone may warrant an exercise of the police power." *People* v. *Stover,* 12 N.Y.2d 462, 467, 191 N.E.2d 272, appeal dismissed, 375 U.S. 42, 84 S. Ct. 147, 11 L. Ed. 2d 107; see 1 Rathkopf, op. cit., c. 14.

Having determined that the ordinance creating the Norwich historic district constitutes a valid exercise of the state's police power, we are left with the question of whether the application of that ordinance to the plaintiffs' property amounts to an unconstitutional deprivation of their property without compensation. In this context, it has often been noted that the police power, which regulates for the public good the uses to which private property may be put and requires no compensation, must be distinguished from the power of eminent domain, which takes private property for a public use and requires compensation to the owner. See, e.g., *DeMello* v. *Plainville,* 170 Conn. 675, 679–80, 368 A.2d 71, and cases cited therein. The difference is primarily one of degree, and the amount of the owner's loss is the basic criterion for determining whether a purported exercise of the police power is valid, or whether it amounts to a taking

necessitating the use of the power of eminent domain. See Sax, "Takings and the Police Power," 74 Yale L.J. 36. "A regulation which otherwise constitutes a valid exercise of the police power may, as applied to a particular parcel of property, be confiscatory in that no reasonable use may be made of the property and it becomes of little or no value to the owner. . . . See, e.g., *Pennsylvania Coal Co.* v. *Mahon,* 260 U.S. 393, 43 S. Ct. 158, 67 L. Ed. 322; *Brecciaroli* v. *Commissioner of Environmental Protection,* 168 Conn. 349, 354, 362 A.2d 948; *Horwitz* v. *Waterford,* 151 Conn. 320, 323, 197 A.2d 636; *Dooley* v. *Town Plan & Zoning Commission,* 151 Conn. 304, 311-12, 197 A.2d 770; *Vartelas* v. *Water Resources Commission,* 146 Conn. 650, 657, 153 A.2d 822." *DeMello* v. *Plainville,* supra, 680; see *Penn Central Transportation Co.* v. *City of New York,* 50 App. Div. 2d 265, 377 N.Y.S.2d 20.

Whether the denial of the plaintiffs' application for a certificate of appropriateness to demolish their building has rendered the Norwich ordinance, as applied to them, confiscatory, must be determined in the light of their particular circumstances as they have been shown to exist. *Bartlett* v. *Zoning Commission,* 161 Conn. 24, 31, 282 A.2d 907; *Dooley* v. *Town Plan & Zoning Commission,* 151 Conn. 304, 311, 197 A.2d 770. In regulating the use of land under the police power, the maximum possible enrichment of a particular landowner is not a controlling purpose. *Goldblatt* v. *Hempstead,* 369 U.S. 590, 82 S. Ct. 987, 8 L. Ed. 2d 130; *Hyatt* v. *Zoning Board of Appeals,* 163 Conn. 379, 383, 311 A.2d 77; *Damick* v. *Planning & Zoning Commission,* 158 Conn. 78, 83, 256 A.2d 428. It is only when the regulation practically destroys or greatly decreases the value of a specific piece of property that relief

may be granted, provided it promotes substantial justice. *Culinary Institute of America, Inc.* v. *Board of Zoning Appeals,* 143 Conn. 257, 261, 121 A.2d 637. "The extent of that deprivation must be considered in light of the evils which the regulation is designed to prevent." *Chevron Oil Co.* v. *Zoning Board of Appeals,* 170 Conn. 146, 152, 365 A.2d 387; see General Statutes § 7-147f.

The plaintiffs had the burden of proving that the historic district commission acted illegally, arbitrarily, in a confiscatory manner or in abuse of discretion. *Byington* v. *Zoning Commission,* 162 Conn. 611, 613, 295 A.2d 553. This the plaintiffs failed to do. See *Maher* v. *New Orleans,* 516 F.2d 1051, 1067 (5th Cir.); *Penn Central Transportation Co.* v. *City of New York,* supra, 274. The plaintiffs went no further than to present evidence that their house was unoccupied and in need of extensive repairs. There was no evidence offered that the house, if repaired, would not be of some value, or that the proximity of the McDonald's hamburger stand rendered the property of practically no value as a part of the historic district.

The Norwich historic district commission, after a full hearing, lawfully, reasonably and honestly exercised its judgment. The trial court was correct in not substituting its own judgment for that of the commission. *Bora* v. *Zoning Board of Appeals,* 161 Conn. 297, 300, 288 A.2d 89.

There is no error.

In this opinion the other judges concurred.