[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, First Church of Christ, Scientist First Church), appeals from the decision of the defendant, Ridgefield Historic District Commission (Commission), denying an application by the plaintiff for a certificate of appropriateness to allow the installation of vinyl siding on its church building. The plaintiff appeals pursuant to General Statutes § 7-147i, CT Page 2737 which provides for persons aggrieved by a decision of the Historic District Commission to take an appeal to the Superior Court.[1]
This matter came before the defendant by application dated May 5, 1995. (Return of Record (ROR), Ex. A.) On June 3, 1995, a site inspection was held at the plaintiff's site and representatives of the plaintiff were given the opportunity to explain their application. On June 20, 1995 and June 21, 1995, members of the Commission traveled to New Canaan to view an aluminum clad church. (ROR, Ex. L, p. 18) The purpose of the inspection was to view the application of aluminum trim, the same trim application as proposed herein. (ROR, Ex. L, p. 18.) A public hearing was held on June 21, 1995, at which time the plaintiff detailed its proposal to the Commission. (ROR, Ex. L, p. 18.)[2] The application was denied by a vote of 5-0. (ROR, Ex. L.) Notice of the denial was sent out on June 26, 1995. (ROR, Ex. M, p. 22.)
An appeal to this court was filed on July 5, 1995. On October 6, 1995, the plaintiff filed a Motion for Trial de novo, claiming that no adequate record was made of the proceeding before the Commission. By order filed March 26, 1996, the court directed that a new hearing be held so that a full and complete record would be available to the court. A new public hearing was convened on May 21, 1996. (Supplement to the Return of Record (SROR), Ex. W.) At the hearing, the Commission agreed to conduct a site inspection at the Goshen church, which had been cited throughout the hearing as an example of the proposed contractor's work.
On June 8, 1996, the Commission members made the trip to the Goshen church, at which time the members met with the proposed contractor, Ted Brown. The trip was documented by a transcript and numerous photographs.
On June 15, 1996, the Commission made a final site inspection at the plaintiff's church in Ridgefield before the Commission concluded the public hearing on June 20, 1996, (SROR, Ex. FF), at which the Commission voted 5-0 to deny the application. (ROR, Ex. II.) Notice of such decision was duly mailed, by certified mail, to the plaintiff and received on June 28, 1996. (Plaintiff's amended appeal, p. 1.)
In its amended appeal filed September 26, 1996, the plaintiff CT Page 2738 alleges that the Commission acted illegally, arbitrarily and in abuse of its discretion in denying its application. Once filed, the "[p]rocedure upon such appeal shall be the same as that defined in [General Statutes] section 8-8," the statute governing zoning appeals. General Statutes § 7-147i.[3]
The trial court reviews the Commission's decision "only to determine whether it was unreasonable, arbitrary or illegal."Schwartz v. Planning Zoning Commission, 208 Conn. 146, 152,543 A.2d 1339 (1988). "Conclusions reached by the commission must be upheld by the trial court if they are reasonably supported by the record." [Internal quotation marks omitted.) DeBeradinis v.Zoning Commission, 228 Conn. 187, 198, 635 A.2d 1220 (1994). "The question is not whether the trial court would have reached the same conclusion, but whether the record before the agency supports the decision reached." Id. "The plaintiff [has] the burden of proof in challenging the administrative action." RedHill Coalition. Inc. v. Conservation Commission, 212 Conn. 710,718, 563 A.2d 1339 (1989).
In the present case, the commission stated the following reasons for their decision denying the plaintiff's application: (1) the church is in a prominent location within a historical neighborhood, and nontraditional materials are not appropriate; (2) a change in the materials or design would diminish the integrity of the church; (3) the smooth siding on the front pediment and lower story on the south side of the building would be altered by the installation of V-groove siding, thus changing the design; (4) application of vinyl siding and aluminum trim would alter shadow lines of projecting and receding elements; (5) vinyl becomes cupped in its profile over a period of time in contrast to wood which remains flat and straight; and (6) aluminum used as trim may dent and peel. (ROR, Ex. M, p. 22-23.)
 I
WHETHER THE COMMISSION SUBSTITUTED ITS OWN VAGUE AND UNDEFINED STANDARDS
The plaintiff argues that the Commission acted illegally, arbitrarily, and in abuse of its discretion in that it substituted its own vague and undefined standards for the standards provided by the General Statutes and the Ridgefield town ordinances by: (1) requiring the plaintiff to apply for a certificate of appropriateness to perform "ordinary maintenance or repair"; (2) failing to apply the standard that the proposed CT Page 2739 work be "appropriate" and instead requiring an exact duplication of existing materials and appearance; (3) failing to consider that any changes in the appearance of the church would be virtually indistinguishable from the public street, way or place; (4) applying a higher standard to the church because of its location within the historic district; and (5) exceeding the bounds of permissible aesthetic considerations.
The record before the Commission reflects that the plaintiff's proposal to "reclad" its church with vinyl siding does not fall within the scope of "ordinary maintenance or repair." Pursuant to General Statutes § 7-147d(a), "[n]o building or structure shall be . . . altered within an historic district until . . . a certificate of appropriateness as to exterior architectural features has been submitted to the historic district commission and approved by said commission." General Statutes § 7-147j(a), however, provides "[n]othing in this part shall be construed to prevent the ordinary maintenance or repair of any exterior architectural feature in the historic district which does not involve a change in the appearance or design thereof . . . ." Ridgefield ordinance § 6-8 states: "Nothing in this chapter shall be construed to prevent the ordinary maintenance or repair of any exterior feature in the historic district which does not involve a change of design thereof. . . ."
Repair has been defined as "the restoration to a sound or good state after decay, dilapidation or injury." Ingalls v. RogerSmith Hotels Corporation, 143 Conn. 1, 7, 118 A.2d 463 (1955). "It does not mean to make something new but rather to refit or restore an existing thing." Id. The record reveals that the application of vinyl siding on the church will create a loss of trim detail (SROR, Ex. W, p. 57), cause a substitution of V-groove for tongue in groove siding (SROR, Ex. FF, p. 267), and change the clapboard width and shininess. (SROR, Ex. FF, p. 261.)
Further, as was noted by a member of the Commission, the United States Department of the Interior Standards (Standards) states in part, "maintenance generally involves the least amount of work needed to preserve the materials and features of the building." (SROR, Ex. X.20, p. 196.) "For example, maintenance of a frame building would include caulking and painting; or, where paint is extensively cracking and peeling, its removal and the reapplication of a protective paint coating." (SROR, Ex. X.20, p. 196.) Also, the Standards state that deteriorated architectural CT Page 2740 features shall be repaired rather than replaced wherever possible. In the event replacement is necessary, the new material should match the material being replaced in composition, design, color, texture and other visual qualities. (SROR, Ex. X. 19.) Since the plaintiff is not proposing to reapply or restore the existing material, i.e., a coat of paint, the plaintiff's proposal falls outside the scope of "ordinary repair." Therefore, the record reflects that the plaintiff's proposal necessitated a certificate of appropriateness from the Historical District Commission.
A review of the record reveals evidence that the Commission applied the proper standards of review, while also taking into. account the appropriate considerations. Connecticut General Statutes § 7-147f(a) provides: "In passing upon appropriateness . . . the commission shall also consider, in addition to any other pertinent factors, the historical and architectural value and significance, architectural style, scale, general design, arrangement, texture and material of the architectural features involved and the relationship thereof to the exterior architectural style and pertinent features of other buildings and structures in the immediate neighborhood."[4] At the First Church, Scientist inspection on June 15, 1996, the commissioners observed the church's current appearance. Then, using a sample of the 5-inch vinyl siding proposed for use by the church, considered how vinyl siding would alter the church's current appearance. (SROR, Ex. FF, p. 251-53.) A transcript of the record revealed that the Commission made the following observations. "The members noted that the exposure did not match that of the real clapboards on the church. It was about one-inch narrower. When held up against the building, Mr. Hancock, a commissioner, also noted a pronounced curve or cupping in the vinyl siding.
"In looking at the window and door trim, Mr. Hancock also noted that with the application of insulation and vinyl siding, the trim would become recessed rather than project as it does now. Mrs. Ide, a commissioner, commented that the detail of the moldings over the doors and the windows would be lost with the application of bent aluminum trim. The moldings would be simplified. Mr. Hancock also commented that the double seams, where lengths of vinyl siding would overlap, would be more pronounced than existing seams where single clapboards are butted together in a staggered manner. Mrs. Ide also pointed out the smooth siding on the lower level and how it contrasts with the clapboard. This clear distinction would be lost if vinyl CT Page 2741 clapboard or V-groove were used." (SROR, Ex. FF, p. 252.)
In reviewing the plaintiff's application, Mrs. Rosa, a commissioner, stated that the Commission needed to decide if the proposal was appropriate, or if it was incongruous to the historic district. (SROR, Ex. FF, p. 273.) Mr. Connors, a commissioner, added that the Commission would consider how the vinyl siding would look from the public street, sixty feet away. (SROR, Ex. W, p. 71.) Thus, the record reveals that the Commission looked carefully at the plaintiff's proposal, applied the proper standard of review, and considered the relevant factors pursuant to General Statutes § 7-147f(a) and Ridgefield ordinance § 6.6.
As for the plaintiff's contention that the Commission abused its discretion by exceeding the bounds of permissible aesthetic considerations, the Connecticut Supreme Court has stated that aesthetic considerations are valid in land use regulation.Figarsky v. Historic District Commission, 171 Conn. 198, 210,368 A.2d 163 (1976). Connecticut case law, however, has not clearly articulated the amount of weight that a Commission can give to aesthetic considerations. Nevertheless, the Connecticut Supreme Court has recognized that in other jurisdictions "aesthetic considerations alone may warrant an exercise of the police power." (Internal quotations marks omitted.) Id. As discussed above, the Commission considered the relevant factors pursuant to General Statutes § 7-147 (a) and Ridgefield ordinance § 6.6. The plaintiff has failed to cite any evidence in the record reflecting that the Commission, in considering the relevant factors, exceeded the bounds of permissible aesthetic considerations.
 II
WHETHER THE COMMISSION ACTED ILLEGALLY, ARBITRARILY, AND IN ABUSE OF ITSDISCRETION
The plaintiff argues that the Commission acted illegally, arbitrarily, and in abuse of its discretion in that it failed to find that the Church's circumstances constituted hardship. General Statutes § 7-147g provides that "[w]here, by reason of topographical conditions, district borderline situations or because of other unusual circumstances solely with respect to a certain parcel of land and not affecting generally the district in which it is situated, the strict application of any provision CT Page 2742 of this part would result in exceptional practical difficulty or undue hardship upon the owner of any specific property, the commission in passing upon applications shall have power to vary or modify strict adherence to said sections . . . so as to relieve such difficulty or hardship . . . ."
In the present case, the plaintiff's alleged hardship is the costs associated with painting the church. These costs, however, do not relate to "topographical conditions, district borderline situations or because of other unusual circumstances solely with respect to a certain parcel of land . . . ." (Emphasis added.) General Statutes § 5 7-147g. Thus, the plaintiff has not asserted a recognizable claim for hardship.
 III
WHETHER THE COMMISSION FAILED TO PROVIDE THE CHURCH WITH A FAIR HEARING
The plaintiff argues that the Commission acted illegally, arbitrarily, and in abuse of its discretion in that it failed to provide the church with a fair hearing by: (1) predetermining that vinyl siding would not be permitted, notwithstanding the particulars of the specific proposal; and (2) selectively enforcing its standards against the church in light of its implicit approval of incongruous structures at the museum adjacent to the church's property.
An argument of prejudgment or bias "must be supported by some evidence proving probability of bias before [the Commission] can be faulted" and there is a presumption of the Board's impartiality, which the plaintiff has the burden to overcome.Huck v. Inland Wetlands Watercourses Agency, 203 Conn. 525,537, 525 A.2d 940 (1987). "In essence, the plaintiffs [must] establish that the public hearing was a sham. In the absence of a showing that the public hearing was held merely to comply with the statutory requirements, it cannot be said that the action of the commission was arbitrary, invalid, or predetermined." Massimov. Planning Commission, 41 Conn. Sup. 196, 201, 564 A.2d 1075
(1989).
In support of its predetermination argument, the plaintiff asserts that "no applications for certificates of appropriateness to install vinyl siding have ever been granted by the Commission." (Plaintiff's Memorandum.) At the May 21, 1996 hearing, counsel for the plaintiff asked if the Commission, as a CT Page 2743 matter of policy, believed vinyl siding to be, per se, inappropriate, to which Commissioner Rosa responded: "I can only tell you from the record that we have never approved vinyl siding in the historic district." (SROR, Ex. W, p. 21.) Further, Commissioner Connors stated, "I don't think we would have accepted the application had we made a determination that vinyl siding is, per se, not permissible, so I think the act of the commission in [accepting] the application under the statute means that we will consider what you present to us." (SROR, Ex. W, p. 23.)
A review of the record reveals ample evidence showing that the Commission fully considered the plaintiff's proposal. On June 10, 1995, the Commission held a site inspection at the plaintiff's church. Then, on June 20, 1995 and June 21, 1995, the Commission traveled to New Canaan to view an aluminum clad church to view the application of aluminum trim, the same trim application proposed by the plaintiff. On June 21, 1995, the Commission held a public hearing to consider the plaintiff's proposal. On May 21, 1996, the Commission held another public hearing concerning the Plaintiff's proposal. On June 8, 1996, the Commission made a sixty-five mile trip to Goshen so that they could conduct a site inspection at a church that has vinyl siding. On June 20, 1996, the Commission made a final site inspection at the plaintiff's church. Based on the foregoing, the record indicates that the plaintiff had the opportunity to fully present its views, and that the Commission fully considered the plaintiff's proposal.
To support its selective enforcement argument, the plaintiff contends that the Commission allows a modern art museum in the historical district to erect semi-permanent sculptures which came within the meaning of General Statutes § 7-147a(a). The plaintiff, however, cites no authority to establish that the sculptures are "structures" under 7-147a. Furthermore, the plaintiff fails to address the fact that the Commission has never allowed vinyl siding in the historic district. Thus, the plaintiff has failed to provide sufficient evidence to support its claim of selective enforcement.
 IV
WHETHER THE APPLICATION OF THE HISTORICAL DISTRICT REGULATIONS BURDENEDTHE PLAINTIFF'S FREE EXERCISE OF RELIGION
CT Page 2744
The plaintiff's final argument is that the application of the historical district regulations to the church is an impermissible burden upon its free exercise of religion. The Connecticut Supreme Court has recognized that the preservation of a historical area or landmark falls within the meaning of general welfare and, consequently, the police power. Figarsky v.Historical District Commission, 171 Conn. 198, 208, 368 A.2d 163
(1976). Churches and religious organizations can be regulated under a state's police power if that regulation is religiously neutral and for secular purposes. Lemon v. Kurtzman,403 U.S. 602, 614 (1973). In the present case, the plaintiff is claiming that its free exercise rights were somehow burdened by the Commission's denial of its application to reclad its church with aluminum siding. The Commission's decision, however, has not interfered with the right of the plaintiff or its members to express their religious views, or associate or assemble for that purpose. Further, the restrictions within the Historical District apply to all other property owners within the district. "The First Amendment cannot be extended to such an extent that a claim of exemption from the laws based on religious freedom can be extended to avoid otherwise reasonable and neutral legal obligations imposed by government." Grace Community Church v.Town of Bethel, Superior Court, judicial district of Danbury, Docket No. 306994 (July 16, 1992, Fuller, J.) citing EmploymentDivision v. Smith, 494 U.S. 872, 888 (1990). The plaintiff has not shown that the Commission's actions here, are an unreasonable restriction on the free exercise of religion.
Thus, the evidence in the record amply supports the Historical District Commission's decision denying the plaintiff's application for a certificate of appropriateness. Accordingly, the plaintiff's appeal is dismissed.
Mihalakos, J.