[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an administrative or record appeal of a decision by the defendant, the Historic District Commission of the town of Westport (Commission), denying an application by the plaintiffs, the Trustees of the Michael Bolotin Qualified Personal Residence Trust, to demolish a house situated in an historic district. The plaintiffs' house, a single-family dwelling with a detached garage, is located at 37 Kings Highway North, Westport, in the Kings Highway North Historic District, which was created in 1972, pursuant to General Statutes § 7-147b.
The defendant Commission denied the plaintiffs' application for a certificate of appropriateness which is required in order to demolish a house in an historic district. The plaintiffs, who purchased the subject premises in August, 1998, then appealed to the Superior Court pursuant to General Statutes § 7-147i. The plaintiffs, as the owners of the subject premises, were determined to be aggrieved. Bossert Corporationv. Norwalk, 157 Conn. 279, 285, 253 A.2d 39 (1968).
In denying the plaintiffs' application, the defendant gave as its reasons the following:
"The Commission determined that the house is significant to the context and integrity of the district. It is important to the street scape and its architectural style supports and is supported by other related architecture in the district and town. Its designation on the National Register as a contributing part of the district reinforces its significance as part of a whole. It is representative of Westport's architectural history and is worthy of protection."
In this appeal, the plaintiffs contend first that the application was automatically approved by virtue of General Statutes § 7-147e, which provides in pertinent part that:
"Within not more than sixty-five days after the filing of an application as required by section 7-147d, the commission shall pass upon such application and shall give written notice of its decision to the applicant." This section also states that: "Failure of the commission to act within said sixty-five days shall constitute approval and no other CT Page 11361 evidence of approval shall be needed." The plaintiffs claim that their application was filed on September 1, 1998, and that the defendant did not deny the request for a certificate of appropriateness until its meeting on November 10, 1998, and did not notify the plaintiffs of its decision until November 13, 1998, both dates outside the sixty-five day limit prescribed by General Statutes § 7-147e.
The plaintiffs also claim that even if their application for a certificate of appropriateness was not approved automatically, the Commission acted illegal, arbitrarily and in abuse of its discretion in denying their application. In this regard, the plaintiffs point out that the subject premises is located on the southwestern edge or boundary of the Kings Highway North Historic District, that the building immediately to the north is considered a "non-contributory" resource to this Historic District, and the building immediately to the south, which is built of concrete block, is outside of the Historic District. Moreover, according to the plaintiff, the house planned for demolition has no architectural, historic, archeological or engineering significance. In this regard, the plaintiffs argue that the front section of the house was built in 1905, and that additions were made in 1973 and thereafter, and that the garage was not built until 1993.
As another ground for appeal, the plaintiffs allege that the defendant should have granted them a variance as authorized by General Statutes § 7-147g, because of the location of the subject premises and the existence of undue hardship for the owners.[1] As an element of this hardship, the plaintiffs point to the fact that the water and sewer lines to the house had been disconnected and the fuel tank was removed, all with the "complicity and due to the negligence of Town officials."
Taking up the issue of automatic approval, the court held two hearings on April 19, 2000 and on April 26, 2000, at which, among others, the plaintiffs' agent, Laura D'Aiuto, and the defendant's clerk, Carol Leahy, testified. The first issue is whether the application for a certificate of appropriateness was filed with the Commission on September 1, 1998, as the plaintiffs contend, or on September 8, 1998, as the defendant asserts, because it is agreed that the defendant acted upon the plaintiffs' application on November 10, 1998. If the application was filed on September 1, 1998, the defendant did not act upon it within sixty-five days.
The parties do not contest certain facts. It is clear that Ms. D'Auito, acting as agent for the plaintiff trustees, applied to the proper officials of Westport for a permit authorizing the demolition of the house at 37 Kings Highway North. Ms. D'Auito was advised that since the house was in a historic district, the owners would have to seek a CT Page 11362 certificate of appropriateness from the Historic District Commission. On September 1, 1998, Ms. Leahy faxed an application for such a certificate to Ms. D'Aiuto. At this point the testimony diverges. Ms. D'Auito says that she completed the application and faxed it back to Ms. Leahy on that same day, September 1, 1998. On the other hand, Ms. Leahy testified that she does not recall receiving a signed application until one week later, September 8, 1998, when the Commission met to hear the application. At that time, Ms. Leahy affixed a stamp on the application indicating receipt on "September 8, 1998." Ms. D'Auito does not have a printout from her fax machine indicating that she returned the completed application to the defendant by fax on September 1 as she claims.
Although it is not without some doubt, the more plausible and logical evidence leads to the conclusion that the application was filed on September 1, 1998. How else does one explain that on September 1, 1998, the very day the application was faxed to the plaintiffs' agent and the day that Ms. D'Aiuto testified that she returned it to the defendant, the local newspaper carried a legal notice from the defendant Commission that the plaintiffs application would be heard by the defendant at its meeting on September 8, 1998? How else to explain that on September 2, 1998, an assistant town attorney for Westport wrote a memorandum to the defendant discussing the Commission's options in ruling on the application? In addition, again by September 2, 1998, a number of property owners in this historic district published an "Action Alert" urging attendance at the September 8 meeting, and further stating that a "request for a certificate of appropriateness to demolish 37 Kings Highway North has been brought to the Commission."
To conclude that the application was not filed until September 8, one would also have to believe that the defendant processed an application which it did not have in its possession and relied solely on a representation by the plaintiffs agent that she would file such an application. When asked whether she had ever acted on a non-existent application before or since this incident, Ms. Leahy conceded that she had not. Her testimony seemed to imply that she was acting so quickly, although without the application in hand, in order to accommodate the applicant. This reason behind this kind of speed seems dubious in light of the fact that the house had been standing some ninety-three years at this point, and it is difficult to understand why a one month delay to the next meeting was so crucial.
Certain statements by members of the defendant Commission fortify the conclusion that the application was filed on September 1, 1998. There was a reference at the September 8th hearing to the existence of a file at the Commission's office. Why would there be a file if there was no application? There was a reference at the same hearing to a document that CT Page 11363 had just been received the night of the hearing. The chairlady of the defendant Commission asked the attorney for the plaintiffs to read this statement aloud because she said it had not been part of the file.[2]
So the first conclusion is that the application was filed on September 1, 1998. Incidentally, if the defendant was correct that no application was filed until September 8, it would seem that the meeting might not have been properly noticed because General Statutes § 7-147e provides that there be no less than five days' notice before a hearing. If there was no application on file, it is arguable that the public notice was void and of no effect.
Thus, at first glance one could conclude that the plaintiffs' application was approved automatically pursuant to General Statutes §7-147e. However, there is another important consideration. All that the applicants presented at the September 8 hearing was a statement of reasons and apparently some photographs.[3] The Commission sought more information concerning what the property would look like without the house and the garage and more details about the garden that the applicants planned to install. It was agreed by the applicants and the Commission that the hearing would be continued to the next meeting in October so that the applicants could present more evidence to satisfy the Commission.[4]
However, the application was not presented in October 1998 at the specific request of counsel for the applicant.[5] The issue is whether the plaintiffs, who did not present an application sufficiently complete to satisfy the Commission on September 8, and who were given a new hearing date in November at their own request, can have the benefit of the sixty-five-day rule.
This in turn presents the question of waiver or estoppel. The plaintiffs cite October Twenty-Four, Inc. v. Planning ZoningCommission, 35 Conn. App. 599, 606-07, 646 A.2d 926 (1994), where it was held that the attendance at a hearing after a site plan had already been automatically approved by operation of law did not constitute waiver or estoppel. However, the Appellate Court in that case distinguished a prior Supreme Court case, Frito-Lay, Inc. v. Planning Zoning Commission,206 Conn. 554, 538 A.2d 1039 (1988), as an example of the application of waiver and/or estoppel because "the applicant, having requested that the commission postpone the date of its decision, waived its right to challenge the commission's alleged failure to adhere to the statutory time limits governing zoning commission hearings." October Twenty-Four,Inc. v. Planning Zoning Commission, supra, 35 Conn. App. 607, n. 4.
Therefore, the issue is whether the request that the October hearing be CT Page 11364 continued "to the date of your November meeting," as counsel for the plaintiffs stated, constitutes conduct "that could be construed as a waiver of its right to automatic approval." October Twenty-Four, Inc. v.Planning Zoning Commission, supra, 35 Conn. App. 607. The request for a continuance to November, 1998 does constitute a waiver of the sixty-five day rule, and hence the certificate of appropriateness cannot be deemed to have been automatically approved by operation of law.
The relatively recent case of Center Shops of East Granby, Inc. v.Planning Zoning Commission, 52 Conn. App. 763, 727 A.2d 807, rev'd on other grounds, 253 Conn. 183, 749 A.2d 1185 (2000), does not require a contrary result. The Appellate Court held in that case that: "carte blanche waiver tied to no particular date has not been countenanced by any case of which we are aware." Id., 772. In the present case, however, the plaintiffs asked for a continuance from the scheduled October, 1998 meeting "to November," not exactly carte blanche.[6]
The plaintiffs also contend that notice of the defendant's decision was not given within sixty-five days. General Statutes § 7-147e does not appear to require that notice be given within that time period, but rather provides that the Commission must act on an application within sixty-five days, and thereafter the applicant must be given written notice of the decision. The written notice triggers the beginning of the period within which an unsuccessful applicant can appeal to the Superior Court pursuant to General Statutes § 7-147i.[7]
Thus, the application was not automatically approved because the plaintiffs requested, for their own purposes and benefit, a postponement of the scheduled October, 1998, hearing, which would have been within the sixty-five day period. Hence the plaintiffs are deemed to have waived and/or are estopped from claiming the benefit of the automatic approval provision of General Statutes § 7-147e.
The next issue is whether the defendant Commission acted illegally, arbitrarily and in abuse of its discretion in rejecting the plaintiffs' application. General Statutes § 7-147d (b) provides in pertinent part that: "no demolition permit for demolition or removal of a building or structure within an historic district shall be issued by a municipality . . . until a certificate of appropriateness has been issued." General Statutes § 7-147a (a) defines "appropriate" as referring to something "not incongruous with those aspects of the historic district which the historic district commission determines to be historically or architecturally significant." General Statutes § 7-147d (c) provides that in the case of a demolition or removal, a historic district commission may request: "a statement of the proposed condition and appearance of property after such demolition or removal, as may be CT Page 11365 reasonably deemed necessary by the commission to enable it to make a determination on the application." General Statutes § 7-147f (a) does not contain any specific reference to demolition as such, but does refer to exterior architectural features and provides that the Commission shall consider "the historical and architectural value and significance, architectural style, scale, general design, arrangement, texture and material of the architectural features involved and the relationship thereof to the exterior architectural style and pertinent features of other buildings and structures in the immediate neighborhood."
In terms of the standard of review of the defendant's decision, General Statutes § 7-147i, which authorizes an appeal to the Superior Court of a person aggrieved by a decision of an historic district commission, provides that: "Procedure upon such appeal shall be the same as that defined in section 8-8," the statute governing zoning appeals. "The trial court reviews the commission's decision only to determine whether it was unreasonable, arbitrary or illegal. Conclusions reached by the commission must be upheld by the trial court if they are reasonably supported by the record. The question is not whether the trial court would have reached the same conclusion, but whether the record before the agency supports the decisions reached. The plaintiff has the burden of proof in challenging the administrative action." (Citations omitted; internal quotation marks omitted.) First Church of Christ, Scientist v. HistoricDistrict Commission, 46 Conn. Sup. 90, 92, 738 A.2d 224, aff'd,55 Conn. App. 59, 737 A.2d 989, cert. denied, 251 Conn. 923, 742 A.2d 358
(1999).
Based on this standard of review, the defendant's decision must be affirmed as it has support in the record. The petition by the neighbors states that: "the front portion of 37 Kings Highway North is a cross-gable farmhouse that was built in 1905 by James E. Crawford and this part of the house is vital to the continuity of the street scape that makes up the Historic District of Kings Highway North." The petition recognized that the 1985 addition to the rear of the house was not historic "and could be demolished to allow the owner to install the `formal, professionally, landscaped gardens' abutting the owner's residence to the south."
Furthermore, the minutes of the meeting of November 1, 1998, at which the application was unanimously rejected, reflect concerns of the Commission members. For instance, the chairwoman stated that: "the house at 37 Kings Highway was important to the fabric of the district because it is a typical vernacular farmhouse." She also stated that she was "uncomfortable with [the applicants'] argument for the demolition of the house with a vague plan for the garden. In [my] opinion, the garden had very little historic connection to the historic district or the street CT Page 11366 scape of the district. If the Commission were to agree to the demolition, there are no specific plans for landscaping to review for the record." One of the commissioners stated that the house had "historic significance" [because it is] typical of farmhouses built in 1905." He also stated that demolition would cause "the view of the other neighbors [to] be damaged thereby."
Finally, the plaintiffs argue that the defendant should have granted a variance as authorized by General Statutes § 7-147g, although the application itself does not seek a variance. In order to justify a variance, the applicant must show "exceptional practical difficulty or undue hardship." The plaintiffs' statement to the defendant concerning the reasons for the requested certificate of appropriateness read in part that: "I wish to demolish [the buildings] to gain more security for my family. I also wish more privacy and additional land for more intensive gardens. The subject property is located directly in front of our residence. Our view onto the above mentioned property is particularly unattractive." It cannot be said that the defendant acted illegally, arbitrarily or in abuse of its discretion in no granting a variance based on the reasons offered by the plaintiffs which appear more subjective and aesthetic than the standard of "exceptional practical difficulty or undue hardship."
The plaintiffs' appeal is therefore dismissed for the reasons stated above.
So Ordered.
Dated at Stamford, Connecticut, this 18th day of September, 2000.
William B. Lewis, Judge