[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
On March 4, 1998, the defendant (hereinafter referred to sometimes as the Commission) adopted certain amended subdivision regulations effective April 1, 1998, entitled "Watershed/Viewshed Regulated Area".
On April 9, 1998, the plaintiff (hereinafter referred to sometimes as the Appellant) through counsel, filed his appeal alleging the defendant acted arbitrarily, unreasonably, and/or illegally in adopting said regulations. The plaintiff is the joint owner with his wife of some thirty-five (35) acres of land in the town of Woodbury, purchased in 1976 upon which they subsequently built a single family residence known as 260 Middle Road Turnpike, Woodbury, CT. The property fronts on Middle Road Turnpike and Cat Swamp Road which is all above the four hundred (400 feet) at sea level and has expansive view of the surrounding towns.
As a resident and taxpayer of Woodbury, the plaintiff claims he is both classically and statutorily aggrieved and is adversely affected by these regulations as alleged in paragraphs 4 and 5 of his complaint.
This court held a hearing on July 30, 2002, when the plaintiff, acting now pro se, was allowed to testify by agreement with defendant's counsel because some of his testimony at a public hearing of February 18, 1998, was inaudible and could not be transcribed.
He summarized his reasons for taking this appeal, why he was aggrieved by these regulations, and introduced six photographs of his property without objection. (See Plaintiff Exhibit a to f).
On May 27, 1998, the defendant filed a Motion to Dismiss claiming the plaintiff lacked standing, therefore, the court did not have jurisdiction. On October 13, 1999, the court (Leheny, J.) denied the motion without prejudice to allow the plaintiff to prove on the trial date that he was an aggrieved party. CT Page 12516
On September 29, 1998, the plaintiff sought to amend his complaint by adding a declaratory judgment count. Since the motion was not acted upon at that time, this court now denies it because he cannot comply with Section 17-54 through 59 of the Practice Book.
There are additional facts relevant to deciding this administrative appeal. Between March 19, 1997 through March 4, 1998, the defendant held seven (7) public hearings and twenty-two (22) meetings to consider, discuss and revise these regulations before adopting them.
The Return of Record filed on November 15, 1999, sets forth the defendant's intent to adopt these regulations, as follows:
a. Promote the goals and objectives of the 1988 Woodbury Plan of Conservation and Development.
b. Encourage the most appropriate use of land.
c. Preserve the natural environment of distinctive ridgeline areas as a visual and historic asset for the benefit of the community.
d. Protect the groundwater recharging function and capacity of the ridges by minimizing the potential for pollution and preserving open areas for groundwater recharge for fragile and scarce subsurface public water supplies or areas with the potential to provide aquifers which can support the future growth of Woodbury.
e. Prevent the creation of any safety or health hazard including, but not limited to, soil erosion, excessive drainage runoff, and degradation of water quality.
f. Minimize the adverse effect of development upon both the visual and functional role of the natural landscape to preserve Woodbury's quality of life.
The 1998 Woodbury Plan of Conservation and Development was adopted pursuant to C.G.S. § 8-23 and reflects the input not only of the Planning Commission but also the input of fifteen other individuals who served on the ad hoc Plan of Development
Committee. It also received the input from hundreds of residents who participated in workshops, completed surveys, and attended public hearings. (ROR, Exh. B, p. 30.) Two of five major recommendations of the plan relate directly to issues addressed by the Regulations: CT Page 12517
 • Institute a strategy for protection of open space and environmentally significant areas in the community;
• Implement an aquifer protection program.
In summarizing existing conditions, the Plan's authors recognized that " (t)he challenge of the Plan of Development is to preserve, in the face of regional growth pressures, that special "sense of place" which exists in Woodbury. (Id. at 5) The Plan reflects that the Town has been shaped by its topography, most notably a series of ridges and brook valleys running north-south. Id. at 9, 20-22. "Significant environmental features include steep slopes, inland wetlands and floodplains, aquifers and their recharge areas and fragile soil characteristics, including depth to bedrock and the water table, and soil permeability." Id. At 20. Because all of Woodbury's drinking water comes from groundwater supply, and a significant portion from the Pomperaug River aquifer, aquifer protection is recognized as critical to the Town. Id. at 26, 81-86. Woodbury has no centralized sewer system and depends almost entirely on septic systems.Id. at 86, 88.
The Plan specifically recognizes the need for permanent preservation of scenic vistas and prominent ridgelines, which are identified as significant natural features. Id. at 26, 28, 45-46. The Plan recommends developing guidelines for dedication of open space within subdivisions, including land which has scenic vistas, and prescribes, as an action that "will need to be taken", amendment of the subdivision regulations to " (r)equire the dedication and/or preservation of identified scenic vista points and prominent ridgelines as open space." Id. at 141, 142.
In addition to the Plan of Development, the Record, returned November 15, 1999, includes the Subdivision Regulations (ROR, Exh. A), minutes of Planning Commission meetings (ROR, Exh. C), copies of Legal Notices, (ROR, Exh. E), transcripts of public hearings (ROR, Exh. F), various drafts of the Regulations (ROR, Exh. B, 3-7), a topographic map of the Town (ROR, Exh. G), and a manual from the Connecticut Commissioner of Environmental Protection and the Chief of the Water Management Bureau, titled Protecting Connecticut's Water Supply Watersheds: A Guild ForLocal Officials, January, 1993. (ROR, Exh. B, 8.) The Guide makes specific recommendations for watershed preservation, advising, at page 24:
Subdivision regulations and review procedures may also be the vehicle for obtaining adequate design and installation of erosion and sedimentation controls, limits on land clearing, meeting environmental impact CT Page 12518 assessment requirements . . . adequate stormwater and drainage control, low flow water fixtures, hazardous materials storage, and trash collection and storage . . . Subdivision requirements dealing with specific water quality objectives can be addressed either in terms of specific control measures that must be employed or an environmental performance standards.
The Guide reports that " (s)tudies comparing land use and runoff water quality have demonstrated significant relationships between increased watershed development and decreased water quality." Id. at 33. It is specifically recommended that municipalities review and strengthen subdivision regulations for watershed protection and adopt new provisions as necessary. Id. at 44.
The Regulations are applicable to all subdivision applications that include subdivision improvements or proposed home sites above the elevation of 400 feet. Exhibit A to Defendant's Brief, § 4.18.2. For subdivisions falling within the scope of the Regulations, additional information, as delineated in the Regulations, and a mitigation plan are required. Id. §§ 4.18.2, 4.18.3. The Planning Commission, based on the information submitted, has the authority to modify, but not to deny, the subdivision plan. Id. § 4.18.5. The specific modifications and safeguards relate to the location of structures on the lot; the removal of vegetation and provision for reforestation and screening; the use of common driveways; reduction of the cutting and filling of slopes; the size and location of septic systems; restrictions on the use of lawn chemicals; the prohibition of underground fuel storage tanks; requirements for the use of biofilters, retention ponds, and other stormwater management methods; and the regulation of floor drains. Id.
§ 418.5.
 CLAIMS OF LAW
A. Aggrievement
In the complaint, the plaintiff alleges that he is both classically and statutorily aggrieved by the defendant's decision. He claims statutory aggrievement pursuant to § 8-8 (a) (1) C.G.S. because this property "abuts or is within a radius of one hundred (100) feet of any portion of the land involved in the decision of the board." He also claims classical aggrievement because he has a specific and personal interest affected by the decision. The plaintiff has the burden to prove aggrievement as to both classical or statutory aggrievement. Zoning Board of Appeals v.Planning Zoning Commission, 27 Conn. App. 297-300-301 (1992). In CT Page 12519Med-Trans. of Conn, Inc. v. Dept. of Public Health, 242 Conn. 152, 158
(1997), our Supreme Court stated:
 "The test for aggrievement long recognized by this court is set forth in our decision in State Medical Society v. Board of Examiners in Podiatry, 203 Conn. 296, 524 A.2d 636 (1987). There we stated that [t]he fundamental test for determining aggrievement encompasses a well-settled twofold determination: first, the party claiming aggrievement must successfully demonstrate a specific personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the decision. Beckish v. Manafort, 175 Conn. 415, 417 (1978)
In his testimony, and in the Return of Record, the plaintiff claims statutory aggrievement in that this property is above the four hundred foot elevation from sea level and is injuriously and legally affected. He also claims to be classically aggrieved because these regulations will restrict and reduce the development of his property. The reasons for claiming them illegal are set forth in paragraphs 4 and 5 of the complaint, sub-paragraph (a) through (u). He claims these regulations will also reduce the number of lots in any future subdivision from ten (10) to about seven (7). Since he has not yet applied for any subdivision approval, his claim is speculative.
There is no evidence that the plaintiff's property was specifically targeted by these amendments nor has the plaintiff filed any application for his property under the Subdivision Regulations, as amended. Nor did he have any subdivision application pending before the Commission prior to the enactment of the amendments.
Two 1994 Superior Court decisions demonstrate that the first prong of the aggrievement test is not satisfied where general amendments affect numerous properties. See Mackowski v. Stratford Zoning Commission,1994 WL 116139 (Fuller, J.); Park City Realty v. Zoning Commission,1994 WL 116168 (Fuller, J.). In these cases, the courts found a lack of aggrievement where a Stratford amendment adopting affordable housing development regulations was of general application and affected no specific property. In Mackowski, the court concluded that the plaintiff CT Page 12520 landowner could not appeal the adoption of such regulations based on the absence of classical aggrievement. The court noted:
 This amendment applies to all residential zones, the limited business zone, and one commercial zone. The regulation change affects no specific property but allows as an additional use affordable housing within these zones . . . Section 5.4 of the zoning regulations is a general amendment which applies to 90% of the town, so the plaintiff's interest is not different from the interest of many other property owners in town. The new regulations do not specifically and injuriously affect the plaintiff's property. Id.
The plaintiff alleges but has failed to prove either statutory a classical aggrievement. The court finds these regulations apply to land above four hundred (400) feet at sea level and applies to all such land in the town. In his testimony, the plaintiff admitted they apply to over fifty percent of the property in Woodbury. In Park City Realty (supra) the court stated the law in aggrievement as follows:
 While a change of regulations applying only to a particular zone covering a small area of town may be appealable by an owner of land within the zone, there is no aggrievement when the zoning regulations are amended so that no particular area or property is affected. This is not a situation where the appellants are one of only a few property owners in the municipality which have parcels which can comply with or will be affected by a change in regulations.
The facts in this appeal are distinguishable from those found in TimberTrails v. Planning Zoning Commission, 222 Conn. at 374, 376 (1992) where an upzoning in fact applied to only a small number of properties where the court found those property owners were classically aggrieved.
From his own testimony and the testimony of Woodbury Town Planner Peter Hughes in the Return of Record, the court finds these amended regulations will apply to all future subdivisions above the four hundred feet elevation from sea level.
B. The surveying and engineering costs for future subdivision willsubstantially increase over property not within regulated area.
Since the plaintiff has not applied for subdivision approval, his claim CT Page 12521 is speculative at this time since he has not incurred any increased costs. There was no expert testimony or any other evidence offered, and the court finds the plaintiff failed in proving this claim.
C. The Commission did not have the statutory authority to enact theseregulations and in fact were primarily based on aestheticconsiderations.
The Commission was acting in a legislative capacity in acting on these amended regulations. Beach v. Planning and Zoning Commission, 141 Conn. 79,84 (1954). From the Return of Record, the court finds they covered many areas where the Commission had the statutory authority to protect the general welfare of the town under Section 8-2 and 8-25 C.G.S. And while acting in a legislative capacity, the commission sought to protect the aquifers, trees, and vegetation in future subdivisions, and also "to preserve the natural environment of the distinctive ridgeline areas as a visual and historic asset for the benefit of the community." Smith v.Zoning Board of Appeals, 227 Conn. 71, 93-94.
The court finds the regulations were enacted for the general welfare of the town and were within the statutory authority of the Commission pursuant to Section 8-2 and 8-25 of the Connecticut General Statutes. "A land use regulation is not invalid simply because it was based on aesthetic considerations . . . aesthetic considerations may have a definite relation to the public welfare. . . . Figarsky v. HistoricDistrict Commission, 171 Conn. 198, 210 (1976).
D. The regulations are not an illegal taking or a condemnation of theplaintiff's property.
As previously pointed out in paragraph C in this decision, this court finds these regulations were adopted to promote the public welfare of the Town of Woodbury.
The plaintiff failed to prove that the regulations do not allow a reasonable alternative use of his property. Huck v. Inland Wetlands Watercourses Agency, 203 Conn. 525, 553 (1987). The plaintiff has the right to submit a subdivision application of his thirty-five (35) acre property for a residential subdivision at any time; Here the plaintiff has not yet filed an application for the Commission to consider. The plaintiff claims but has failed to prove that his property now has less value. Even if he were able to prove a decrease in its value, it would not justify a conclusion that there has been an unconstitutional taking. Manor Development Corporation v. ConservationCommission, 180 Conn. 692, 695-96 (1980). CT Page 12522
Furthermore, the regulations allow for a modification of any proposed subdivision rather than a denial. The plaintiff has the burden of proving the Commission has acted illegally, arbitrarily, and in a confiscatory manner. The court finds the plaintiff has failed to do so.
For all of the foregoing reasons, the plaintiff has failed to sustain his burden of proof that these amended regulations were unreasonable, arbitrary, or illegal. The plaintiff's appeal is dismissed.
ROMEO G. PETRONI Judge Trial Referee CT Page 12523