******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

EDGEWOOD STREET GARDEN APARTMENTS, LLC
*v.* CITY OF HARTFORD
(AC 36946)

DiPentima, C. J., and Sheldon and Mullins, Js.

*Submitted on briefs September 14, 2015—officially released*
*February 23, 2016*

(Appeal from Superior Court, judicial district of New Britain, Swienton, J.)

*Clifford S. Thier* filed a brief for the appellant (plaintiff).

*Jonathan H. Beamon*, senior assistant corporation counsel, filed a brief for the appellee (defendant).

*Opinion*

MULLINS, J. The plaintiff, Edgewood Street Garden Apartments, LLC, appeals from the judgment of the trial court rendered in favor of the defendant, the city of Hartford, on the plaintiff's complaint. On appeal, the plaintiff claims that the court erred when it (1) made various findings of fact that were unsupported by the evidence introduced at trial, (2) did not find that provisions of the municipal and state building codes that the defendant violated constituted a "policy" supporting a claim of municipal liability[1] under 42 U.S.C. § 1983,[2] (3) concluded that the defendant's actions did not constitute a taking of property for which the plaintiff was entitled to just compensation, (4) placed the burden of proof on the plaintiff, and (5) did not draw an inference in the plaintiff's favor on account of the defendant's failure to preserve evidence critical to the plaintiff's case. We disagree and affirm the judgment of the trial court.

The following facts, as found by the trial court, inform our consideration of the plaintiff's claims on appeal. "On February 6, 2011, the plaintiff owned the land and building at 270–272 Edgewood Street (subject property) in the city of Hartford, which was purchased in August, 2009, for $65,000. The building on the property was built in 1925. The plaintiff planned on performing massive renovations to the building with the intent of renting out its apartments.

"On February 6, the fire department for the city was dispatched to the subject property after it received a report that the roof had collapsed. David Viens, a state of Connecticut certified building inspector who worked in the city's department of licenses and inspection, was called to go to the subject property. Upon his arrival, he saw cracks at some areas in the sidewalls of the subject property and above two windows. He determined that the roof had collapsed, which was causing the cracks in the side walls as well as bowing of the walls, and he was concerned that due to the snow load on the roof, the building could come down at any minute, endangering the adjoining property. He spoke with Allen Gaudet, the general contractor on the construction of the building, and Gaudet informed Viens that there was a temporary pitched roof on the building and that the roof pitch had changed.

"Viens made a determination that the building was to be demolished. He spoke with Louis Lawson, Jr., the [plaintiff's] vice president . . . and informed him that he had ordered the building to be taken down. After Viens spoke with Lawson [Jr.'s] father, Louis Lawson, Sr., Lawson, Jr., asked Viens if he could call his structural engineer as well as his insurance adjuster. Neither one was available to come out that day (which was a Sunday), but Viens stated he would not wait until the

next day to have the building demolished.

"Neither Lawson, Jr., nor Lawson, Sr., is an engineer or a licensed building inspector with the state of Connecticut. After discussion with his supervisor, Viens made the decision to begin the demolition that day, and ordered the city's subcontractor to begin.[3] The construction company tore down 75 percent of the building on Sunday, and completed the demolition of the building the next day.

"No licensed engineer examined the building prior to the demolition. George Torello, a structural engineer and forensic investigator with an impressive background, testified on behalf of the plaintiff. However, his examination was done based upon the photos which were taken that day. Based on his examination, he opined that there was not enough information to conclude that the building would collapse.

"There was a dearth of evidence as to damages . . . ." (Footnote in original.)

The following procedural history also informs our review. The plaintiff filed a six count complaint alleging the following: (1) denial of equal protection under § 1983; (2) denial of substantive due process under § 1983; (3) denial of procedural due process under § 1983; (4) inverse condemnation under § 1983; (5) inverse condemnation under the fifth amendment to the United States constitution; and (6) inverse condemnation under article first, § 11, of the Connecticut constitution. After a bench trial, the court issued a memorandum of decision in which it found in favor of the defendant on all six counts of the complaint. The court concluded that (1) with respect to counts one through four, there were no causes of action under § 1983 because the plaintiff did not submit evidence of a policy that directed Viens to demolish the building, and (2) with respect to counts five and six, "there was no taking of the property, but a demolition of a building evaluated to be unsafe." The court then found that even if it had found in favor of the plaintiff on any count of the complaint, the plaintiff would not have prevailed because of its failure to establish actual damages.[4] Accordingly, the court rendered judgment in favor of the defendant. This appeal followed. Additional facts will be set forth as necessary.

I

The plaintiff first claims that the trial court made various findings of fact that were "unsupported, or even contradicted, by the evidence presented at trial." The plaintiff challenges factual findings by the court regarding (1) the extent to which the plaintiff had completed renovations to the building on the day it was demolished, (2) Viens' credentials, and (3) Viens' various determinations concerning the building that led to his conclusion that it should be demolished. On the basis

of our review of the record, we conclude that none of these findings was clearly erroneous.

We first set forth the standard of review. "Because a trial court is afforded broad discretion in making its factual findings, those findings will not be disturbed by a reviewing court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed . . . . In applying the clearly erroneous standard of review, [a]ppellate courts do not examine the record to determine whether the trier of fact could have reached a different conclusion. Instead, we examine the trial court's conclusion in order to determine whether it was legally correct and factually supported. . . . This distinction accords with our duty as an appellate tribunal to review, and not to retry, the proceedings of the trial court." (Citation omitted; emphasis omitted; internal quotation marks omitted.) *O'Connor* v. *Larocque*, 302 Conn. 562, 574–75, 31 A.3d 1 (2011). "[I]n a case tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony. . . . On appeal, we do not retry the facts or pass on the credibility of witnesses." (Internal quotation marks omitted.) *Bristol* v. *Tilcon Minerals, Inc.*, 284 Conn. 55, 65, 931 A.2d 237 (2007).

## A

The plaintiff first challenges the court's finding as to the extent to which the plaintiff had completed renovations to the building as of the day it was demolished. The plaintiff argues that the court's finding that on February 6, 2011, the plaintiff "planned on performing massive renovations to the building" was erroneous because the plaintiff in fact already had completed most of its renovations, including structural reinforcements. We are not persuaded.

To be sure, the record does contain testimony regarding work that already had been performed on the building as of February 6, 2011. Nevertheless, there was also testimony that on that date, significant improvements had yet to be performed. In particular, Gaudet, the plaintiff's general contractor, testified that the building still lacked a permanent roof, which could not be installed until other work had been performed. In light of this testimony, the court's characterization of renovations as "planned" was not clearly erroneous.

## B

The plaintiff next challenges the court's findings regarding Viens' credentials. The plaintiff argues that the court's finding that Viens was a "certified building

inspector" was in error. We disagree. In support of its argument, the plaintiff relies on copies of e-mails entered into evidence in which Viens' signature indicates that he was a heating inspector. There is nevertheless evidence in the record to support the court's finding that Viens was a certified building inspector. At trial, Viens testified on cross-examination that he was a certified building inspector and/or a certified building official with the state. That Viens' e-mail signature indicates his title is heating inspector does not lead us to conclude that the court's finding was clearly erroneous. The court was entitled to credit Viens' testimony regarding his credentials.[5] Accordingly, we conclude that the court's finding that Viens was a certified building inspector was not clearly erroneous.

C

Finally, the plaintiff challenges the court's findings regarding Viens' various determinations concerning the building that led to his conclusion that it should be demolished—specifically, that "[Viens] determined that the roof had collapsed, which was causing the cracks in the side walls as well as bowing of the walls, and he was concerned that due to the snow load on the roof, the building could come down at any minute, endangering the adjoining property." The plaintiff divides this challenge into three arguments.

First, the plaintiff argues that the court erroneously "accepted that there had been a roof on the building at the time of the snowfall . . . ." This was error, the plaintiff argues, because although Viens believed the building had a roof just prior to the snowfall, the roof previously had been removed during renovations. We disagree.

Viens testified repeatedly that he determined that the roof had collapsed. Thus, the record supports the court's finding that Viens had made a determination that there had been a roof and that the roof had collapsed prior to ordering demolition of the building.[6] Accordingly, the court's finding was not clearly erroneous.

Second, the plaintiff argues that the court erroneously concluded that a roof collapse caused cracks and bowing in the building's walls. This was error, the plaintiff argues, because no evidence corroborated Viens' determination to that effect. Again, we disagree.

Viens testified that there were cracks and a bow on the building's left side. In response to a question posed by the plaintiff's counsel as to what distinguished the plaintiff's building from other buildings exhibiting bowing and cracking that he had not ordered demolished, Viens responded: "One thing was, this building, the roof caved in."[7] Thus, the record supports the court's finding that Viens made the determination that the collapse of the roof caused the cracks and bowing. The court's

finding, therefore, was not clearly erroneous.

Finally, the plaintiff argues that there is no evidence in the record to support the court's finding that Viens was concerned that snow on the roof could bring the building down. We disagree. The record contains ample support for this finding. On February 6, 2011, at 10:30 a.m., Viens completed a "Notice Violation/Emergency and Order to Abate." On that form, Viens described the condition warranting emergency action as "snow load has [a]ffected the stability of the structure." At trial, Viens testified that "[s]now load was a concern" in determining whether the building was unsafe and needed to be torn down.

The presence in the record of conflicting testimony is insufficient to undermine the court's finding that Viens believed the snow's weight could cause the building's collapse. Although Viens did testify that "[i]f snow went into the building, no, the building would not collapse," the court, as the trier of fact, was free to resolve this conflicting testimony as it saw fit. *Clennon* v. *Hometown Buffet, Inc.*, 84 Conn. App. 182, 187–88, 852 A.2d 836 (2004). Because it was supported by evidence in the record, the court's finding that Viens was concerned that snow load on the building's roof could cause the building to collapse was not clearly erroneous.

II

Next, the plaintiff claims that the court erred when it did not find that provisions of the municipal and state building codes that the defendant violated constituted a "policy" supporting a claim of municipal liability under § 1983. Specifically, it claims that the court erred in concluding that provisions vesting an official with the discretion to determine whether to order a building's demolition did not constitute "a policy of demolishing properties." We conclude that the court properly determined that the plaintiff failed to establish a cause of action under § 1983.[8]

The following portions of the court's memorandum of decision inform our review of this claim. In concluding that the plaintiff did not prove a cause of action under § 1983, the court found that "[n]o evidence was introduced by the plaintiff to indicate that the demolition of the building on the subject property was pursuant to any type of city of Hartford policy. There was no official policy of demolishing properties. The city inspector, Viens, believed that the property was unsafe, and he made the discretionary decision based upon his experience to have the property demolished. In so doing, he followed the city's ordinance and the State Building [C]ode." After quoting § 9-54 of the Hartford Municipal Code[9] (municipal code) and § 116.4 of the State Building Code,[10] (building code) the court stated that both provisions "indicate that the decision to demolish a property which is determined to be unsafe

is left to the discretion of the building official. There was no evidence submitted of any policy which directed Viens to take action for demolition, but rather he was directed to evaluate the condition of the property and make a determination of its safety.”

We set forth the legal principles applicable to a claim of municipal liability pursuant to § 1983 for the deprivation of a constitutional right. “A municipality or other local government may be liable under [§ 1983] if the governmental body itself subjects a person to a deprivation of rights or causes a person to be subjected to such deprivation. See *Monell* v. *New York City Dept. of Social* [*Services*], 436 U.S. 658, 692 [98 S. Ct. 2018, 56 L. Ed. 2d 611] (1978) [quoting 42 U.S.C. § 1983]. But, under § 1983, local governments are responsible only for their own illegal acts. . . . They are not vicariously liable under § 1983 for their employees’ actions. . . . Plaintiffs who seek to impose liability on local governments under § 1983 must prove that action pursuant to official municipal policy caused their injury.” (Citations omitted; emphasis omitted; internal quotation marks omitted.) *Connick* v. *Thompson*, 563 U.S. 51, 60, 131 S. Ct. 1350, 179 L. Ed. 2d 417 (2011).

“[I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the moving force behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights. Where a plaintiff claims that a particular municipal action itself violates federal law, or directs an employee to do so, resolving these issues of fault and causation is straightforward. . . . Where [however] a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee.” (Citation omitted; emphasis omitted; internal quotation marks omitted.) *Board of County Commissioners* v. *Brown*, 520 U.S. 397, 404–405, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997). “[W]here the policy relied upon is not itself unconstitutional, considerably more proof than [a] single incident [of unconstitutional activity] will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the ‘policy’ and the constitutional deprivation.” (Footnote omitted.) *Oklahoma City* v. *Tuttle*, 471 U.S. 808, 824, 105 S. Ct. 2427, 85 L. Ed. 2d 791 (1985).

Against the backdrop of these principles, we place our discussion of the court’s claimed error within the proper frame. We disagree with the plaintiff’s con-

tention that the court found that the provisions of the municipal and building codes were not policies. The court acknowledged the existence of § 9-54 of the municipal code and § 116.4 of the building code and, accordingly, the existence of a municipal policy. See *Monell* v. *New York City Dept. of Social Services*, supra, 436 U.S. 660–61.

The court implicitly concluded, however, that the identified municipal policy was not the "moving force" behind the constitutional violations the plaintiff claimed arose from Viens' order to demolish the building.[11] In finding that the municipal and building code provisions did not mandate Viens to demolish the plaintiff's building, "but rather . . . directed [him] to evaluate the condition of the property and make a determination of its safety," and, therefore, left the decision to demolish to his discretion, the court concluded that there was simply no policy or custom directing building officials to demolish buildings. Thus, our resolution of the plaintiff's claim turns on the propriety of the court's conclusion concerning causation. See *Board of County Commissioners* v. *Brown*, supra, 520 U.S. 404.

We conclude, on the basis of the record and the relevant case law, that the court properly found that the plaintiff did not establish a cause of action under § 1983 because it did not prove the required causal link between the defendant's policy and the constitutional violations the plaintiff claims to have suffered. Although the plaintiff went to some lengths to present evidence that Viens was mistaken in determining that the plaintiff's building posed an imminent danger to adjoining properties, Viens' error, if any,[12] fell well short of establishing the requisite causal link. Id., 406–407 ("[t]hat a plaintiff has suffered a deprivation of federal rights at the hands of a municipal employee will not alone permit an inference of municipal culpability and causation; the plaintiff will simply have shown that the *employee* acted culpably" [emphasis in original]). Because the identified municipal policy itself is not unconstitutional,[13] the plaintiff was required to prove more than a single exercise of Viens' discretion to impose liability on the defendant. See *Oklahoma City* v. *Tuttle*, supra, 471 U.S. 823 ("[I]f one retreats far enough from a constitutional violation some municipal policy can be identified behind almost any such harm inflicted by a municipal official . . . . At the very least there must be an affirmative link between the policy and the particular constitutional violation alleged." [Internal quotation marks omitted.]). For the foregoing reasons, the court properly determined that the plaintiff failed to establish a basis for the municipal defendant's liability on any of its § 1983 claims.

### III

Next, the plaintiff claims that the court improperly concluded that the defendant's actions did not consti-

tute a taking of property for which the plaintiff was entitled to just compensation. In counts five and six of its complaint, the plaintiff asserted inverse condemnation claims under the federal and state constitutions,[14] alleging that the defendant's demolition of its building constituted a taking of property for which it was entitled to just compensation. The court, in ruling in the defendant's favor, concluded that "there was no taking of the property, but a demolition of a building evaluated to be unsafe." On appeal, the plaintiff contends that the demolition was a taking because it deprived the plaintiff of the opportunity to resell the building or rent the apartments therein, and, therefore, "the execution of [the] defendant's regulations has interfered with [the] plaintiff's reasonable investment-backed expectations." (Internal quotation marks omitted.) We disagree.

"[F]or this constitutional claim, we review the trial court's factual findings under a clearly erroneous standard and its conclusions of law de novo." *Rural Water Co.* v. *Zoning Board of Appeals*, 287 Conn. 282, 298, 947 A.2d 944 (2008). The plaintiff's claim implicates a long-standing tension between two important principles: the right of a property owner to be free from an uncompensated government encroachment on its property interest and "the imperative of protecting the public from dangerous conditions posed by decrepit structures." *Brown* v. *Hartford*, 160 Conn. App. 677, 680, A.3d , cert. denied, 320 Conn. 911, A.3d (2015). Although both the federal and state constitutions provide for just compensation when property is taken, "[n]either the constitution of the United States . . . nor the constitution of Connecticut . . . den[ies] the state the power to regulate the uses to which an owner may devote his property.

"All property is held subject to the right of government to regulate its use in the exercise of the police power, so that it shall not be injurious to the rights of the community, or so that it may promote its health, morals, safety and welfare. The power of regulation by government is not unlimited; it cannot . . . be imposed unless it bears a rational relation to the subjects which fall fairly within the police power and unless the means used are not within constitutional inhibitions. The means used will fall within these inhibitions whenever they are destructive, confiscatory, or so unreasonable as to be arbitrary. . . . Regulations may result to some extent, practically in the taking of property, or the restricting its uses, and yet not be deemed confiscatory or unreasonable. . . . When . . . a legislative enactment is challenged in its application as beyond the scope or as an abuse of the state's police power, two issues are raised: first, whether the object of the legislation falls within the police power; and second, whether the means by which the legislation attempts to reach that object are reasonable." (Citations omitted; internal quotation marks omitted.) *Figarsky* v. *Historic District*

*Commission*, 171 Conn. 198, 206–207, 368 A.2d 163 (1976).

In the present case, our resolution of the plaintiff's challenge turns on the second of these two issues:[15] "whether the application of [the challenged] ordinance to the plaintiffs' property amounts to an unconstitutional deprivation of their property without compensation. In this context, it has often been noted that the police power, which regulates for the public good the uses to which private property may be put and requires no compensation, must be distinguished from the power of eminent domain, which takes private property for a public use and requires compensation to the owner. . . . The difference is primarily one of degree, and the amount of the owner's loss is the basic criterion for determining whether a purported exercise of the police power is valid, or whether it amounts to a taking necessitating the use of the power of eminent domain. . . . A regulation which otherwise constitutes a valid exercise of the police power may, as applied to a particular parcel of property, be confiscatory in that no reasonable use may be made of the property and it becomes of little or no value to the owner." (Citations omitted; internal quotation marks omitted.) Id., 210–11.

Whether the demolition of the plaintiff's building in this case was confiscatory "must be determined in the light of [its] particular circumstances as they have been shown to exist. . . . In regulating the use of land under the police power, the maximum possible enrichment of a particular landowner is not a controlling purpose. . . . It is only when the regulation practically destroys or greatly decreases the value of a specific piece of property that relief may be granted, provided it promotes substantial justice. . . . The extent of that deprivation must be considered in light of the evils which the regulation is designed to prevent." (Citations omitted; internal quotation marks omitted.) Id., 211–12.

On the basis of our review of the record, we conclude that the court properly determined, in light of the circumstances shown by the evidence presented at trial, that demolition of the plaintiff's building pursuant to the defendant's police power did not amount to a taking. Lawson, Sr., testified that he purchased the subject property for $65,000 in August, 2009, with a goal of renting out eighteen apartment units. At the time of trial, the plaintiff still owned the subject property.[16] There was no testimony or other evidence indicating that "no reasonable use may be made of the [subject] property"; (internal quotation marks omitted) id., 211; such as evidence that the plaintiff was prevented from rebuilding. In light of the dearth of evidence tending to show that the defendant's exercise of its police power was unreasonable or confiscatory, the trial court properly concluded that there was no taking when it ruled in the defendant's favor on the plaintiff's inverse con-

demnation claims in counts five and six.

## IV

Next, the plaintiff claims that the court improperly assigned it the burden of proof. In support of this claim, the plaintiff argues that the burden of proof at an administrative hearing—of which the plaintiff was deprived because of the emergent nature of the demolition—is on the agency seeking to act. Because, the plaintiff argues, the present action is a "substitute" for the administrative hearing it should have received, the defendant should have borne the burden of proof at trial. Alleging various evidentiary shortcomings, the plaintiff argues that the defendant did not carry its burden. We conclude that the court properly assigned the plaintiff the burden of proof.

"When a party contests the burden of proof applied by the trial court, the standard of review is de novo because the matter is a question of law." (Internal quotation marks omitted.) *Zabaneh* v. *Dan Beard Associates, LLC*, 105 Conn. App. 134, 142, 937 A.2d 706, cert. denied, 286 Conn. 916, 945 A.2d 979 (2008). "The general burden of proof rests upon the plaintiff in civil actions. . . . The defendant's failure to present any evidence in contradiction of that offered by the plaintiff gives no support to the claim that the truth of all the essential allegations of the complaint was established. A plaintiff prevails not by reason of the weakness of the defendant's case but because of the strength of his own." (Internal quotation marks omitted.) *Suresky* v. *Sweedler*, 140 Conn. App. 800, 807, 60 A.3d 358 (2013).

The plaintiff cites no supporting authority for its argument that the present action is a "substitute" administrative hearing rather than a plenary civil action. Cf. *Brown* v. *Hartford*, supra, 160 Conn. App. 692 (§ 9-54 not unconstitutional despite its lack of administrative appeal provision; aggrieved party may bring postdeprivation civil action). Accordingly, the cases cited by the plaintiff noting that the burden of proof is on an agency in an administrative action; e.g., *Wisniowski* v. *Planning Commission*, 37 Conn. App. 303, 655 A.2d 1146, cert. denied, 233 Conn. 909, 658 A.2d 981 (1995); are inapposite. We conclude that the court did not err when it required the plaintiff to bear the burden of proof.

## V

Finally, the plaintiff claims that the court erred when it did not draw an inference in the plaintiff's favor on account of the defendant's failure to preserve evidence critical to the plaintiff's case—namely, the defendant's demolition of the building without taking any measurements or detailed photographs. We disagree.

"In *Beers* v. *Bayliner Marine Corp.*, 236 Conn. 769, 775, 675 A.2d 829 (1996), our Supreme Court adopt[ed] the rule of the majority of the jurisdictions that have addressed the issue [of spoliation of evidence] in a civil

context, which is that the trier of fact *may* draw an inference from the intentional spoliation of evidence that the destroyed evidence would have been unfavorable to the party that destroyed it. . . . To be entitled to this inference, the victim of spoliation must prove that: (1) the spoliation was intentional, in the sense that it was purposeful, and not inadvertent; (2) the destroyed evidence was relevant to the issue or matter for which the party seeks the inference; and (3) he or she acted with due diligence with respect to the spoliated evidence. . . . [The court] emphasized that the adverse inference is permissive, and not mandatory . . . ." (Emphasis in original; internal quotation marks omitted.) *Williams* v. *State*, 124 Conn. App. 759, 767, 7 A.3d 385 (2010).

Contrary to the plaintiff's argument that the court "should have drawn an inference that the missing evidence would have disproved [the] defendant's arguments that the building was in imminent danger of collapsing," whether to draw an adverse inference was left to the court's discretion. The court was not obligated to draw an adverse inference merely on the basis of the defendant's failure to take measurements and photographs that the plaintiff deemed satisfactory. See *Williams* v. *State*, supra, 124 Conn. App. 767 ("even if we assume, without deciding, that the plaintiff produced evidence sufficient to permit the [workers' compensation] commissioner to draw an adverse inference, the decision as to whether or not to draw such an inference was within the discretion of the commissioner"). There was sufficient evidence in the record, in the form of Viens' testimony regarding his predemolition assessment of the building and his determination that it posed an imminent danger, to support the court's decision not to draw an adverse inference. We will not second-guess the court's assessment of Viens' credibility. Accordingly, we reject the plaintiff's claim that the failure to draw an adverse inference was an abuse of discretion.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Because we conclude that the court properly determined that the plaintiff did not establish a claim of municipal liability pursuant to 42 U.S.C. § 1983, we need not consider its related claim on appeal that the court improperly concluded that the defendant's actions did not violate the plaintiff's right to due process.

[2] Title 42 of the United States Code, § 1983, provides in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."

[3] The court noted in its memorandum of decision that the order stated: "The Notice Violation/Emergency and Order to Abate indicates that 'unsafe structures and equipment [exist],' 'snow load has [a]ffected the stability of the structure,' and under actions necessary to abate violation(s): 'City has the permission from . . . owner to hire a demo contractor for emergency measure—bill will follow after work complete' . . . ."

[4] As a threshold matter, we consider whether we lack subject matter jurisdiction over the appeal on the ground that the plaintiff's claims are moot because of its failure to challenge the trial court's damages finding. Pursuant to this court's order of September 8, 2015, both parties filed supplemental briefs on September 23, 2015, addressing this issue.

"Mootness raises the issue of a court's subject matter jurisdiction and is therefore appropriately considered even when not raised by one of the parties. Mootness is a question of justiciability that must be determined as a threshold matter because it implicates [this] court's subject matter jurisdiction . . . . In determining mootness, the dispositive question is whether a successful appeal would benefit the plaintiff or defendant in any way." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Lyon* v. *Jones*, 291 Conn. 384, 392–94, 968 A.2d 416 (2009).

We raised the issue of mootness to consider whether the court's finding that the plaintiff failed to prove damages, which the plaintiff does not challenge, is an independent basis for the judgment, which would prevent this court from providing practical relief on appeal. "In *In re Jorden R.*, [293 Conn. 539, 979 A.2d 469 (2009)] our Supreme Court decided that where alternative grounds found by the reviewing court and unchallenged on appeal would support the trial court's judgment, independent of some challenged ground, the challenged ground that forms the basis of the appeal is moot because the court on appeal could grant no practical relief to the complainant." (Citations omitted; internal quotation marks omitted.) *Green* v. *Yankee Gas Corp.*, 120 Conn. App. 804, 805, 993 A.2d 982 (2010). We conclude that the court's finding regarding damages did not independently support the judgment because proof of actual damages was not a necessary element of the plaintiff's causes of action. Notwithstanding its failure to prove actual damages, the plaintiff could have prevailed and received nominal damages. "The award of nominal damages is appropriate when there is a clear invasion of a legal right . . . but no finding of a compensable injury." *Lyons* v. *Nichols*, 63 Conn. App. 761, 769, 778 A.2d 246, cert. denied, 258 Conn. 906, 782 A.2d 1244 (2001); see also *D'Addario* v. *Viera*, 8 Conn. App. 152, 152–53, 510 A.2d 1382 (1986) (affirming judgment for plaintiff awarding him one dollar where plaintiff established defendant's liability but did not present sufficient proof of damages). The plaintiff's claims, therefore, are not moot, and we have subject matter jurisdiction over the appeal.

[5] Relatedly, the plaintiff argues that the court's erroneous finding that Viens was a certified building inspector is "significant" in light of its finding that neither Lawson, Sr., nor Lawson, Jr., was an engineer or a licensed building inspector. Again, we disagree. Because there was evidence to support the court's finding regarding Viens' credentials, its findings with respect to other individuals' qualifications do not undermine that finding.

[6] The court did not, as the plaintiff suggests, make its own determination that the roof had collapsed.

[7] We do not read the court's memorandum of decision to indicate that the court itself found a causal relationship between a roof collapse and cracks and/or bowing. On the contrary, the court found that Viens, in deciding to order the building's demolition, determined that the collapse caused cracks and bowing.

[8] Because we conclude that the court correctly determined that the plaintiff failed to establish a basis for municipal liability pursuant to § 1983, we need not consider the plaintiff's specific claims of constitutional deprivations. *Canton* v. *Harris*, 489 U.S. 378, 385, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989) ("our first inquiry in any case alleging municipal liability under § 1983 is . . . whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation").

[9] Section 9-54 of the Hartford Municipal Code provides: "If, in the opinion of the Director of Licenses and Inspections, there exists actual and immediate danger of the falling of any structure or part thereof, so as to endanger life or property, he shall order such structure or part thereof to be torn down or shall cause the work to be done which is necessary to render the structure temporarily safe until the proper proceedings can be taken as provided in section 9-51. He may in such cases and in any case where any building or part thereof has fallen and life is endangered by the occupation thereof, order the inmates and occupants of such building or part thereof to vacate forthwith. He may further, by and with the approval and assistance of the director of public works, when necessary for the public safety, temporarily close the sidewalks and streets adjacent to such building or part thereof. The department of police, when called upon by the director to do so, shall enforce such orders."

[10] Section 116.4 of the State Building Code provides: "When imminent danger or an unsafe condition requiring immediate action exists and the owner of the building or structure cannot be located, or refuses or is unable to expeditiously render the premises safe, the building official shall order the employment of the necessary labor and materials to perform the required work as expeditiously as possible. Such work shall include that required, in the building official's sole opinion, to make the premises temporarily safe, up to and including demolition."

"The State Building Code . . . shall be the building code for all towns, cities and boroughs." General Statutes § 29-253 (a).

[11] "[T]he construction of a judgment is a question of law for the court . . . ." (Citation omitted; internal quotation marks omitted.) *Chapman Lumber, Inc.* v. *Tager*, 288 Conn. 69, 91, 952 A.2d 1 (2008).

[12] The court made no findings of fact as to the correctness of Viens' determination that the building should be demolished because it posed an immediate danger. In any event, we note that "to hold [a] municipality liable [under § 1983], the agent's actions must implement rather than frustrate the government's policy." (Internal quotation marks omitted.) *Roe* v. *Waterbury*, 542 F.3d 31, 37 (2d Cir. 2008), cert. denied, 558 U.S. 933, 130 S. Ct. 95, 175 L. Ed. 2d 234 (2009).

[13] We recently held that § 9-54 of the municipal code is constitutional. *Brown* v. *Hartford*, 160 Conn. App. 677, 692,      A.3d     , cert. denied, 320 Conn. 911,     A.3d     (2015).

[14] "Article first, § 11, of the constitution of Connecticut provides: 'The property of no person shall be taken for public use, without just compensation therefor.' The fifth amendment to the United States constitution provides in relevant part: '[P]rivate property [shall not] be taken for public use, without just compensation.' The takings clause of the fifth amendment is applicable to the states through the due process clause of the fourteenth amendment. See, e.g., *Palazzolo* v. *Rhode Island*, 533 U.S. 606, 617, 121 S. Ct. 2448, 150 L. Ed. 2d 592 (2001); *Darien* v. *Estate of D'Addario*, 258 Conn. 663, 665 n.3, 784 A.2d 337 (2001)." *Bristol* v. *Tilcon Minerals, Inc.*, supra, 284 Conn. 83 n.20. Our Supreme Court has applied the same analysis both to federal and state claims of inverse condemnation. See *Bauer* v. *Waste Management of Connecticut, Inc.*, 234 Conn. 221, 250 n.16, 662 A.2d 1179 (1995).

[15] The defendant does not challenge whether the object of the legislation falls within the police power. To fall within the police power the regulation must have a reasonable relation to the public safety, health, morality, or welfare. *Figarsky* v. *Historic District Commission*, supra, 171 Conn. 206–207. The provisions at issue in this case, namely, provisions of the municipal and state building codes addressed to unsafe buildings, clearly are reasonably related to public safety, and thus fall within the scope of the police power. Furthermore, the enabling statute grants municipalities "the power to . . . (7) (A) (iii) . . . cause the removal and demolition of unsafe buildings and structures . . . ." General Statutes § 7-148 (c).

[16] Lawson, Jr., testified that the land contained "grass [and] sawdust." At the completion of demolition, the construction company hired for the task had "sunk a lot of the debris into the basement of the building and [thrown] a layer of dirt on the top of it" instead of clearing the debris from the property. There was no testimony as to what effect, if any, the buried debris would have had on the plaintiff's future use of the property.